## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### BOWEN V. COMMONWEALTH.

November 20, 1919.

1. DOMICILE—*Residing—Tax Statutes.*—The words "residing there-in" and the words "residing in his district," as used in the Virginia statutes, relating to taxes upon intangible property, refer to persons domiciled in the district of the local commissioner making the assessment.

2. DOMICILE—*Every Person must have a Domicile—Presumption as to Continuance.*—For a variety of purposes, including taxation, every person must have a domicile, and but one; and this domicile, whether it be of origin or of choice, is presumed to continue until a new one is obtained.

3. DOMICILE—*Change of Domicile.*—In order to acquire a new domicile, there must be a union of intention and residence—*animus et factum* must concur. The new domicile is not acquired until there is not only an abandonment of the old residence, but a fixed intention to establish a new residence, followed by execution of the intent.

4. DOMICILE—*Intent—How Established—Acts and Declarations.*—Intent as an element of domicile is to be inferred from declarations and from conduct. Evidence of expressed intent has no controlling weight if such an intent is inconsistent with the acts and general conduct of the person. In such a case, acts and conduct showing intent outweigh declarations or expressions of intent.

5. DOMICILE—*Declarations and Conduct—Case at Bar.*—In the instant case, the taxpayer, a native of Virginia, though engaged in business for a number of years in Cincinnati, spent a large part of his fortune in buying and improving a farm in Virginia in 1905. After leaving Cincinnati and before and after the purchase of the farm, he rented a furnished house in Washington and also spent a portion of several winters there in various hotels or apartments. After the year 1910, when not traveling for his health, he lived on his farm in Virginia. He had stated before the purchase of the farm that he wanted to buy a home to "end his days on." On the other hand, numerous witnesses testified that after he had purchased the farm he

declared that it was only a summer residence and Washington was his permanent home. His only business interests were in Virginia. He paid the capitation tax in Virginia for some years, and for three years, including 1915, reported an income for taxation there. He made out his federal income tax return as a resident of Virginia for two years prior to 1915. In 1915, during an hour's interview with the examiner of records, he did not suggest a residence anywhere other than in Virginia. His first claim of non-residence was made to the tax officials only when it was thought he was going to be assessed for omitted years.

*Held:* That the taxpayer was domiciled in Virginia within the meaning of the tax laws in the year 1915.

Error to a judgment of the Circuit Court of Clarke county, on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Mc Lanahan, Burton & Culberson* and *Conrad Kownslar,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, W. T. Lewis* and *Oscar L. Shewmake,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The Honorable George Latham Fletcher, who decided the case in the trial court has fairly and fully stated the controlling facts shown by the record. As we agree with his conclusion and his reasons therefor, we hereby adopt his opinion, which follows:—

"George A. Bowen, as resident of Clark county, Virginia, was assessed for the year 1915 with $42,825.00 of intangible property on which the State taxes amounted to $275.36 and the county taxes to $85.65, and with a net taxable income of $3,907.00 on which the State levy amounted to $39.07, and with a poll tax of $1.50.

"On the 5th day of November, 1915, Mr. Bowen filed his petition in the Circuit Court of Clarke county, alleging that he was not a resident of Virginia, nor domiciled in Clarke county, and praying for that reason that he be exonerated from the payment of the State and county taxes on his intangible property, income and poll tax so assessed against him.   On the 23rd day of May, 1916, the Circuit Court of Clarke county by its orders duly entered, having found that Bowen was not a resident of Virginia, nor domiciled in Clarke county, exonerated him from the payment of the taxes aforesaid.

"Thereafter, on the 26th day of March, 1917, the Commonwealth of Virginia, by C. Lee Moore, Auditor of Public Accounts, filed its petition for rehearing of Bowen's application, and on July 16, 1917, came on to be heard before me.

"The question presented is whether George A. Bowen was in 1915, a resident of Clarke county, Virginia, within the meaning of our tax laws and as such assessable with taxes on intangible property, the situs of which for taxation is the domicile of the taxpayer.

"The facts relied on by the Commonwealth to justify this assessment are as follows:—

"George A. Bowen, who was a native of Virginia, and in his early boyhood had lived in the neighborhood of Winchester, Va., went to live in Cincinnati, Ohio, where he made his home and engaged in business for a number of years, and became fairly prosperous.   In the year 1900,

having retired from business, he left Cincinnati, placing his household furniture and effects in storage there, and travelled abroad for some time. On his return to this country, he went to Washington, D. C., where during a portion of 1902-3 he rented and occupied a furnished house. Again for a portion of the year 1908-9 he rented a furnished house in Washington, D. C., and has spent a portion of several winters there in various hotels or apartments.

"In 1905, five years after leaving Cincinnati, he purchased of the heirs of E. P. C. Lewis, a valuable farm in Clarke county, Virginia, known as 'Brentwood,' containing about 208 acres, situated about two miles from the town of Berryville, and proceeded to expend considerable sums in making extensive improvements thereon in the way of a dwelling and other buildings. Some sixteen months or more were occupied in making these improvements, and not until the spring of 1907 did Mr. Bowen move to 'Brentwood.' He then brought his furniture from Cincinnati where it had been in storage ever since he left that place, and some other household effects from Baltimore, to his Clarke county home, where he has continued to live and carry on his farm operations for the greater portion of each year ever since. He has never had a tenant on his farm, except that once in the year 1910, when he was away in Europe for some time, a Mrs. Kelly occupied his dwelling house at 'Brentwood.' Mr. Bowen was in feeble health and spent his winters at various places in the south and west, oftimes on the advice of physicians, in search of health. In 1910, the year after he surrendered his last rented house in Washington, D. C., he spent his time travelling in Europe. He himself states that after 1911 he was unable to spend his winters in Washington city. In the winter of 1912, he spent some

time at the Shoreham Hotel in Washington, and in the Adirondacks. The following winter of 1913, he spent in Arizona. And again in the winter of 1914, with the exception of several days which he spent at the Willard Hotel in Washington, he was in Arizona. In fact after the year 1910, when Mr. Bowen was not travelling in the winters for his health, he lived at his place in Clarke county. After the year (1910), whenever he was in Washington, Mr. Bowen had lodgings at various hotels and apartment lodgings, and when he left he gave up his lodgings. He had no business interest and owned no property in the city of Washington.

"While out in Arizona he made his federal income tax returns for the years 1913 and 1914 to the internal revenue collector for the western district of Virginia at Roanoke, Va.

"For the years 1912 and 1913, he reported for taxation an income to the commissioner of the revenue for Clarke county. For the year 1914, he reported no income, but in 1915, he again voluntarily reported to the commissioner of revenue of Clarke county, a gross income of $8,788.00 and a deposit in bank of $500 for taxation. He paid a capitation or poll tax in Clarke county for several years prior to the year 1915. When summoned before and interrogated by the examiner of records as to the sources of the income of $8,788.00 which he had returned for 1915 from his intangible assets, he went to the office of the examiner prepared to furnish, did furnish and list in his own handwriting on the tax interrogatory blank some $48,825.00 of intangible property. His interview with the examiner lasted for an hour or more and at no time did he suggest to this officer that he was a resident of Washington, D. C., or elsewhere. Not until later, when having been summoned before the

local board of review of Clarke county and having appeared in company with his attorney, and the question of his omitted taxes for prior years was raised, did he claim for the first time to any tax official of Clarke county that he was a non-resident of Virginia, and domiciled in the city of Washington. He admitted on the witness stand that in buying the farm in Clarke county he had come to Virginia with the sentimental desire to return to the place of his early associations. When he first visited Clarke county he stated to a Mr. Smallwood that he wanted to buy a home near Berryville or Winchester 'to end his days on.' These are the facts in the main urged by the Commonwealth in support of its right to make this assessment.

"On the other hand, Mr. Bowen, in support of his claim that in 1915 he was a resident of and domiciled in the city of Washington, D. C., relies on the following facts and considerations:—

"That after leaving Cincinnati, he made his first physical residence in Washington; that at that time he expressed a liking for that city and a desire to live there; that he took furnished houses and had various places of abode there with the intention of making it his permanent home; that he made at various times declarations to various people in Washington, some of whom testify that he said his Clarke county place was only a summer home, but Washington was his permanent home, others testify to their opinion that he was generally regarded by acquaintances in Washington as a resident of that place; that he also made declarations to various persons in Clarke county, the substance of which were to the same general effect, viz., that 'Brentwood' was his summer home and Washington his permanent residence, whilst to others still he referred to Washington as his winter home; that he exer-

cised no political rights in Virginia by registering or voting; that though he paid the capitation tax in Clarke county for some years he did so in ignorance that he was paying it; that his payment of an income tax in Clarke county was made only upon such income as was derived from his Virginia property, which he ignorantly thought was taxable in Virginia; that in 1915, when he returned both income and intangible property, the latter to the examiner of records, he did so in order to give information to that officer which he thought he was required by law to give, and it was not done for the purpose of being taxed, and that his returning the federal income tax while in Arizona as a resident of Virginia should not be given any weight in view of his repeated contemporaneous declarations to the contrary. These are the main facts and contentions of Mr. Bowen.

[1] "It is not necessary to discuss the technical distinctions in significance between the words 'residence' and 'domicile' used in particular statutes, since our Supreme Court of Appeals has held that the words 'residing therein,' and the words 'residing in his district,' as used in the Virginia statutes relating to taxes upon intangible property, can only refer to persons domiciled in the district of the local commissioner making the assessment. *Cooper's Adm'r* v. *Commonwealth*, 121 Va. 338, 93 S. E. 680.

"Was George A. Bowen, then, domiciled in Clarke county, Virginia, in the year 1915?

[2, 3] "This case, like many other similar cases in this and other States, involves fundamentally the problems of an accurate analysis of that complex aggregate of facts and intention, i. e., physical facts and mental facts which go to make up the legal concept of domicile. For a variety of purposes, including taxation, every person must have a domicile, and but one; and this domicile, whether it be

of origin or of choice, is presumed to continue until a new one is obtained. As generally stated, in order to acquire a new domicile there must be a union of intention and residence—*animus et factum* must concur. The new domicile is not acquired until there is not only an abandonment of the old residence, but a fixed intention to establish a new residence followed by execution of the intent.

"In this case it is admitted that the previous domicile of Mr. Bowen was in Cincinnati, Ohio. This domicile, it is claimed, Mr. Bowen abandoned and acquired a new domicile in Washington, D. C. I think it is open to grave doubt whether the evidence clearly establishes this contention. It is certain that in 1900, when Mr. Bowen left Cincinnati he had no fixed intention of making Washington his permanent residence or domicile. His daughter, Miss Elizabeth Bowen, said (Record p. 56), her father had not determined upon Washington as his home before leaving Cincinnati. He went abroad, and upon his return came to Washington. He occupied a furnished house during a portion of 1902-3, giving it up at the expiration of the lease. Miss Bowen said he liked Washington better than any other place and wanted to live there. This testimony of his daughter, and the fact that he lived in Washington during 1902-3, is the only evidence tending to show he acquired a legal residence or domicile there between the time he left Cincinnati in 1900 and 1905, when he purchased the farm in Virginia. During the other years of this period the evidence does not show where Mr. Bowen physically resided. Under these circumstances it would be difficult to say when, during this period, Mr. Bowen acquired a domicile in Washington within the legal definition of that term.

"But assuming that a domicile in Washington was ac-

quired by choice,. did Mr. Bowen abandon this domicile and acquire still another domicile in Clarke county, Virginia?

"His own testimony as to his intention in coming to Virginia answers this question in the negative. Numerous witnesses testify that after Mr. Bowen had purchased 'Brentwood' in 1905 he declared his Clarke county property was only a summer residence and Washington city his permanent home. Do his conduct and the other physical facts support his declared intention?

[4] "Intent is to be inferred from declarations and from conduct. And it is a well settled rule that evidence of expressed intent has no controlling weight if such an intent is inconsistent with the acts and general conduct of the person. In such a case, acts and conduct showing intent outweigh his declarations or expressions of intent. Mr. Bowen spent a large part of his fortune in buying and improving his home in Clarke county. To this home he brought his furniture which had been in storage ever since he left Cincinnati. At this home he has spent the greater portion of each year since 1907 when he moved to it. Since 1909, when he gave up the last furnished house he had in Washington he has had no physical residence in that city except for short periods as any transient guest might have at some hotel or apartment house. He owned no property there. His only business interests were the farming operations in Virginia. He paid the capitation tax in Clarke county for some years, and for three years, 1912, 1913, and 1915 reported an income for taxation there. While out in Arizona he made out his Federal income tax return as a resident of Virginia for two years prior to 1915. In an hour's interview with the examiner of records, known to him as a tax official, in which all his property holdings were gone over, he did

not suggest a residence anywhere other than in Virginia. ·His first claim of non-residence was made to the tax officials only when it was thought he was going to be assessed · for omitted years. He admitted that he once expressed a desire to spend his remaining days in sight of the Blue Ridge mountains. It was not denied that on his first visit to Clarke county he said to the sheriff of that county, then a tenant on 'Brentwood' farm, that he wanted to buy a home near Berryville or Winchester 'to end his days. on.' He claimed to have paid personal taxes in the District of Columbia, but for what years, in what amounts, or on what property, he did not disclose.

"With a man of Mr. Bowen's intelligence and business experience, it is difficult to reconcile these facts and such a course of conduct with his expressions of intention. It may be said that no single one of the circumstances or facts here recited is sufficient to establish a domicile in Virginia. Doubtless that is true, since domicile depends · on no one fact alone. It is urged by counsel for Mr. Bowen that no great weight should be attached to the facts that he paid poll taxes, reported income both State and Federal, in Virginia, and explains these facts by the statement that most people are ignorant in tax matters and. do not understand the application of tax statutes. Such an explanation would be a reasonable one in many instances, but in this case, whilst no single act, or fact or circumstance is de'cisive, the aggregate of all the facts and circumstances in this case, giving to each its proper significance, in my view, shows an intent in the mind of Mr. Bowen wholly inconsistent with his declared or expressed intention to have his domicile in the city of Washington, and should therefore ·outweigh such declared intention.

"Counsel for Mr. Bowen have cited the case of *Cooper's Adm'r* v. *Commonwealth,* above referred to. which was

decided September 20th last by our Supreme Court of Appeals, as controlling in the case at bar. In some respects that case presents points of similarity. But other facts present such striking contrasts that a brief statement of them will be sufficient to distinguish it from his case. Thomas H. Cooper had been domiciled in West Virginia ever since his childhood and until 1904 when he took a residence in Salem, Virginia. When he first came to Salem, and on every other occasion when the matter was referred to he said his residence in Salem was only temporary, that he had come only for the purpose of educating his children and purposed to retain his domicile in West Virginia and to return there when his purpose in Virginia was accomplished. In support of these declarations of intention by Cooper, it was shown that during all his life in Salem, Va., he continued to pay poll taxes in West Virginia, and had voted regularly in that State. After coming to Virginia and up to 1909 he was postmaster at Coaldale, a mining town in West Virginia. He was manager of two coal companies, president of another, a director of a bank and of a trust company, all located in West Virginia, during his residence in Salem. A large part of his estate was invested in these concerns, and as an officer of them he actively managed their extensive interests, going regularly every ten days or two weeks to West Virginia and remaining there several days. At Cooper's West Virginia he reserved a room always, which he called his own, in a house on the property of one of these companies. When he first came to Virginia the commissioner of the revenue at Salem proposed to assess him with capitation tax and demanded that he list intangible property for taxation. But Cooper denied his liability for taxes on this class of property in Virginia on the ground that he was not domiciled in Virginia and did not purpose to change

his domicile from West Virginia.   And each year thereafter, when the tax interrogatories were presented to him he erased all portions which would indicate that he was domiciled in Virginia and always refused to list or pay any capitation or intangible tax in Virginia during his life time.   There were other acts of Cooper's apparently inconsistent with his declarations, but which on analysis were not regarded as controlling by the court in view of the undisputed facts just stated showing a complete harmony between his conduct and his expressed intent.   The case at bar presents no such unequivocal course of conduct on the part of Mr. Bowen.

"For the reasons above stated, I have reached the conclusion that Geo. A. Bowen was domiciled in Clarke county, Virginia, within the meaning of our tax laws in the year 1915, and is therefore assessable with the tax on his income and intangible property as assessed against him for that year.   His petition will, therefore, be dismissed."

*Affirmed.*