Syllabus.

## Staunton.

## W. H. WILKINSON AND C. B. WILKINSON v. R. K. SPILLER AND BEVERLEY BERKELEY.

September 17, 1925.

1. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators— Domicile and Residence—Sections 5247 and 5360 of the Code of 1919.—* Where the right of citizenship or the power to tax that class of personal property which follows the person of the owner is involved, the legal domicile must be determined, because of necessity there can only be one such domicile. Residence and domicile, however, are not synonymous, for while a person can have only one domicile, he may have several residences. Under sections 5247 and 5360 of the Code of 1919, as to appointment of administrators, it is the residence of the intestate and not his domicile that determines the jurisdiction to appoint.

2. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators— Domicile and Residence—Sections 5247 and 5360 of the Code of 1919— Jurisdiction.*—The statute governing the appointment of administrators contemplates four distinct conditions, each of which confers jurisdiction upon the appointment of administrators, and neither of which depends upon legal domicile as distinguished from residence.

3. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators— Jurisdiction—Place where Intestate has a Mansion House.*—Under sections 5247 and 5360 of the Code of 1919, if the decedent has a mansion house which is his residence, the court of that county in which that mansion house is maintained has jurisdiction over the appointment of an administrator for his estate.

4. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators— Jurisdiction—Known Place of Residence.*—Under sections 5247 and 5360 of the Code of 1919, if the decedent has no mansion house but lives with a friend or relative, or in a boarding house, and so has a known place of residence, the establishment of that fact gives jurisdiction to the court of that locality.

5. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators— Jurisdiction—Place where Decedent has His Real Estate.*—Under sections 5247 and 5360 of the Code of 1919, where the decedent has neither a mansion house nor a place of residence, the court of the

county or corporation wherein any of his real estate lies has juris-
diction to appoint his administrator.

6. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators—Juris-
diction—Place where Intestate Dies.*—Under sections 5247 and 5360
of the Code of 1919, if the decedent has no mansion house or known
place of residence or real estate, then the court of the county or
corporation in which he dies, or has estate, may appoint his adminis-
trator.

7. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators—
Jurisdiction—Real Estate in Two Counties—Case at Bar.*—In the
instant case, decedent, while he had the capacity to choose his place
o residence, abandoned his mansion house or known place of resi-
dence in Campbell county for more than five months before his death,
and did not intend to resume his residence there. He may not have
acquired another mansion house or known place of residence in Bed-
ford county at the time of his death, but he certainly had real estate
in that county, and therefore the circuit court of Bedford county had
jurisdiction to appoint administrators for his estate under sections
5247 and 5360 of the Code of 1919.

8. EXECUTORS AND ADMINISTRATORS—*Appointment of Administrators—
Acquiescence of Heirs.*—Plaintiffs, in the instant case, complained of
the appointment of administrators for the estate of a decedent
on the ground of want of jurisdiction in the court. After the appoint-
ment of the defendants as administrators, upon the motion of those
who represented two-thirds in interest of the distributees of the
decedent, all the distributees, including the plaintiffs, were convened,
and these plaintiffs signified their assent to the appointment which
had already been made of defendants as administrators. Plaintiffs
also agreed to the disposition of the furniture. One of the plaintiffs
agreed to inspect an iron safe, with a view to buying it if it suited
him, and an automobile was appraised by three of the distributees.
All of this was done with the assent of the plaintiffs.

*Held:* That if this did not create a legal estoppel, it presented a
situation in which any court should not be swift to undo what had
been so done with their acquiescence.

Error to an order of the Circuit Court of Bedford
county, refusing to annul the appointment of adminis-
trators. Judgment for defendants. Plaintiffs assign
error.

*Affirmed.*

The opinion states the case.

*S. S. Lambeth, Jr.,* for the plaintiffs in error.

*Woods, Chitwood, Coxe & Rogers,* for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

The plaintiffs here and in the court below complain of a final order of the Circuit Court of Bedford county, made October 22, 1924, refusing to vacate and annul the appointment of Spiller and Berkeley as administrators of the estate of Oscar M. Turner, deceased. The plaintiffs claimed to be the lawful administrators of the decedent by virtue of an order thereafter entered by the clerk of the Circuit Court of Campbell county on October 29, 1924.

The plaintiffs are nephews of the decedent and the defendants, Spiller and Berkeley, attorneys at law of Roanoke, Virginia; and the question is whether the appointment of Spiller and Berkeley by the Circuit Court of Bedford county is lawful. The plaintiffs deny that the Circuit Court of Bedford county had any jurisdiction.

The determination of the question involves the construction of two statutes. Code, section 5360, provides, so far as is pertinent, that "in the case of a person dying intestate, the jurisdiction to hear and determine the right of administration of his estate shall be in the same court or before the same clerk who would have jurisdiction as to the probate of his will, if there was a will." Code, section 5247, as to the probate of wills, provides (so far as it is pertinent) that "the circuit and corporation courts of the Commonwealth, and the

clerks of the said circuit courts, shall have jurisdiction of the probate of wills according to the following rules— that is to say: In the county or corporation wherein the decedent has a mansion house or known place of residence; if he has no such house or place of residence, then in a county or corporation wherein any real estate lies that is devised or owned by the decedent; and if there be no such real estate, then in the county or corporation wherein he died or a county or corporation wherein he has estate: * * ."

These are the facts proved:

"On the 18th day of October, 1924, O. M. Turner departed this life at Catawba Sanatorium, located in the county of Roanoke, Va. The cause of his death was tuberculosis.

"For about forty years prior to his death said O. M. Turner had been employed by the Southern Railway Company as a station agent and telegraph operator at Lynch station, in Campbell county. Mr. Turner had qualified himself to practice law, and many years before his death had been licensed and had been admitted to practice before the Circuit Court of Campbell county. His letter heads were as follows: 'O. M. Turner, Attorney at Law, Lynch Station, Virginia.'

"For many years he had owned the home place of his father, which was located in Bedford county near Leesville, about six miles from Lynch station, where he worked. He had spent about $2,000 in fixing up the home place as a home for himself. He had put in the house running water with a bath room and a gas light system. He kept his own room at the home all the time up to his death. He attempted to spend each Saturday night and Sunday at the home place, when he could get away from his work, and rarely failed to return home on Saturday night to take his bath, as

he had no bathing facilities at Lynch station. Sometimes during the winter months when the roads were impassable he would not get home for the week end. He was a bachelor and had always boarded while he was at work at Lynch station, and a good many years ago, before his sister's marriage to J. W. Merritt, his mother and sister had also boarded there. He had his laundry done at Lynch station. After his mother and sister ceased to board at Lynch station, he built a one-room board house, plastered inside, where he slept, still continuing to take his meals out. In this room he had a bed, a desk, an iron safe, two chairs and a few law books. He was not assessed with any taxes in Bedford, but was assessed with and paid in Campbell county capitation, personal property and real estate taxes. The home place lies partly in Campbell and partly in Bedford counties. The larger acreage is in Campbell county, but the most valuable part of the farm, or the best of the land, lies in Bedford county. The home place or mansion house is located in Bedford county, along with the barn and other outbuildings of the home. It was shown by the testimony of several witnesses that the decedent stated that he paid his taxes in Campbell county because it was more convenient for him to do so, and because the rate was lower in Campbell county than it was in Bedford county. He was a registered voter at Lynch Station precinct, in Campbell county, and for many years, certainly as much as twenty and probably longer, he had actually voted at the elections held at said precinct, though it was not shown exactly when he last voted. At the time he was fixing up the home place, about twenty years before his death, he told the men who did the work on the house that he was fixing up the place as a home for himself, where he could always

come, and that when he quit work, or became incapacitated either by sickness or old age, he expected to spend his declining years there. He rented this place some years ago to a man named Hackworth, but for some years before his death his brother-in-law, Mr. Merritt, had been on the place, taking care of it, making what he could off of it, and paying Mr. Turner the sum of one hundred and fifty dollars per annum, which they estimated was about enough for Mr. Turner to pay the taxes, insurance and repairs. During all of this time the decedent reserved his room with use of the bath and other appurtenances of the home, and occupied it practically every Saturday and Sunday in the summer time, and as frequently in the winter time as the condition of the roads would permit.

In May, 1924, decedent failed in health to such an extent that he could no longer perform the duties as station agent. For some years his brother had tried to get him to give up his work, because of his failing health, but he had refused to do so, and continued to work as long as he was able. Mr. C. B. Wilkinson, one of the parties hereto, hearing of the sickness of Mr. Turner, went to Lynch station, accompanied by his wife, some time in May, 1924, and finding his condition not at all good, they took him back with them to Lynchburg on the same day. On the following day the decedent returned to Lynch station to meet the auditor of the Southern Railway and be properly checked and relieved from duty as station agent, the man who relieved him having already been sent to Lynch station. This having been done, he immediately returned to the home of C. B. Wilkinson, in Lynchburg, and never thereafter returned to Lynch station. After about two weeks at the home of C. B. Wilkinson, upon the advice of physicians, his case having been

diagnosed as tuberculosis, he was taken by C. B. Wilkinson to Catawba Sanatorium, in Roanoke county, where he remained until his death. About the middle of June C. B. Wilkinson wrote Charles S. Turner, the only living brother of the decedent, who was in the United States army and stationed at Honolulu, telling him of his brother's sickness, but advising him that he was not then in an immediately dangerous condition and that he would keep him advised. He afterwards received a letter from Mrs. Mitchell, his niece, and a daughter of J. W. Merritt, who was living on the decedent's home place—this daughter, however, living in Roanoke, Va., and being closer to her uncle at Catawba than any of the relatives. In this letter Mrs. Mitchell told her uncle, Charles, of the serious condition of his brother, whereupon he immediately obtained a furlough and returned home, arriving in August. Mrs. Mitchell further testified that O. M. Turner, while at Catawba Sanatorium, expressed a desire to be carried to his home in Bedford at a time when he was sane and knew what he was talking about— that she, Mrs. Mitchell, made arrangements to carry him to his Bedford mansion house or home, but the doctors would not permit her to take him to Bedford. He found his brother in such mental and physical condition that it was not possible for him to look after his own affairs, and thereupon he took steps to have a committee appointed. Upon the appointment of Beverley Berkeley and R. K. Spiller as committee, they immediately took charge of the estate of the said O. M. Turner, and the same has been in their possession ever since. O. M. Turner died at Catawba on the morning of October 18, 1924, and that afternoon motion was made by Judge Berkeley, on behalf of Charles S. Turner and the members of the Merritt family, rep-

resenting two-thirds in interest of the estate, for the appointment of the said Berkeley and Spiller as administrators. The administration, however, was not completed until October 22nd, when both Beverley Berkeley and R. K. Spiller being present, the Circuit Court of Bedford county, Judge P. H. Dillard presiding, entered the order of appointment, the execution of the bond was completed and the administrator's oath administered. On the same day that the administrators qualified they met with all the heirs, including both W. H. Wilkinson and C. B. Wilkinson, and certain matters concerning the disposition of the estate were taken up and considered. When it was asked if the appointment of the administrators was satisfactory, those present signified their assent and no dissenting voice was raised. The furniture in the mansion house was disposed of. W. H. Wilkinson was to inspect the iron safe at Lynch station with a view of purchasing it if it suited him. The automobile was appraised by three of the heirs, one of whom was T. J. Wilkinson, and it was then and there sold and transferred to C. S. Turner at the appraised price of two hundred and fifty dollars. All of this was done with the assent, agreement and participation of both W. H. Wilkinson and C. B. Wilkinson, both being present all of the time. On October 29, 1924, said W. H. Wilkinson and C. B. Wilkinson, representing one-third of the estate, appeared before the clerk of the Circuit Court of Campbell county and qualified as administrators. The administrators appointed by the Circuit Court of Bedford county appealed from the action of the clerk of the Circuit Court of Campbell county, and upon the hearing of the said appeal the aforesaid facts were shown."

For the plaintiffs it is vigorously contended that

only the Circuit Court of Campbell county had juris-diction to make the appointment, and therefore that the appointment in Bedford county was invalid. It is fair to say, we think, that this argument is based upon the contention that when a legal domicile, as distinguished from a residence, is established, only the court of the county in which such domicile is has juris-diction to appoint the administrator.

[1] The distinction between domicile and residence has been frequently made. The subject is discussed in the case of *Cooper's Adm'r* v. *Commonwealth*, 121 Va. 338, 93 S. E. 680, and in a number of other cases which we shall cite without comment. Where either the right of citizenship or the power to tax that class of personal property which follows the person of the owner is involved, the legal domicile must be deter-mined, because of necessity there can be only one such domicile. *Bowen* v. *Commonwealth*, 126 Va. 182, 101 S. E. 232; *Talley* v. *Commonwealth*, 127 Va. 316, 103 S. E. 612; *Commonwealth* v. *Kernochan*, 129 Va. 405, 106 S. E. 367, 30 A. L. R. 601; *Chandler* v. *Chandler*, 132 Va. 418, 112 S. E. 856.

Residence and domicile, however, are not synonymous, for while a person can have only one domicile, he may have several residences. In *Long* v. *Ryan*, 30 Gratt. (71 Va.) 718, which was an attachment case, there was an attachment against the property of a contractor, who was domiciled in Washington, but he had come to Virginia, intending to remain about nine months, until he had completed a contract, proposing afterwards to leave Virginia; and the court held, under the statute permitting attachments against nonresidents, that notwithstanding the fact that his domicile was in Washington, he was temporarily a resident of Virginia, and the attachment was dismissed.

So that we cannot agree with the learned counsel for the plaintiffs in error, that because the evidence here establishes the fact that for many years the domicile of the decedent was in Campbell county, therefore it follows that the appointment of the administrator in Bedford county is invalid.

[2] Before adverting further to the facts, it may clarify the matter to call attention to the fact that the statute upon which the decision depends contemplates four distinct conditions, each of which would confer jurisdiction, and neither of which depends upon legal domicile as distinguished from residence:

[3] (a) The decedent may have a mansion house, which implies residence, and if he has a mansion house which is his residence, the court of the county in which that mansion house is located has jurisdiction.

[4] (b) The decedent may have no mansion house, and yet he may live with a friend or relative, or in a boarding house, and so have a known place of residence, and the establishment of this fact gives jurisdiction to the court of that locality.

[5] (c) The statute contemplates that the decedent may have neither such a mansion nor such a place of residence, and then the court of the county or corporation wherein any of his real estate lies has jurisdiction to appoint his administrator.

[6] (d) If neither of these conditions appear, then the court of the county or corporation in which he dies, or has estate, may appoint his administrator.

It is obvious that this statute cannot be so construed as to limit the appointment of a decedent's administrator to the court having jurisdiction over his legal domicile, and that this is not the test of such jurisdiction.

Let us advert to some of the facts which tend to

support the conclusion of the trial court. They may be thus summarized:

1. At the time of the decedent's death, and for many years prior thereto, he had owned the farm with the dwelling house, located in Bedford county, and this was the home place of his father.

2. He kept his own room at this Bedford county home all the time up to his death. He attempted to spend each Saturday night and Sunday at the home place when he could get away from his work, and rarely failed to return home on Saturday night to take his bath, as he had no bathing facilities at Lynch station, which was in Campbell county. Sometimes in the winter months, when the roads were impassable, he would not get home for the week end. And again, "During all this time the decedent reserved his room with the use of the bath and other appurtenances of the home, and occupied it practically every Saturday and Sunday in the summer time, and as frequently in the winter time as the condition of the roads would permit."

3. That about twenty years prior to his death, when he was spending some $2,000 fixing up that particular dwelling, he stated he was fixing up the place as a home for himself where he could always come, and that when he quit work, or became incapacitated, either by sickness or old age, he expected to spend his remaining years there.

4. That in May, 1924, five months before his death, he became incapacitated by sickness, tuberculosis, and quit work, having worked as long as he was able, and left Campbell county and never thereafter returned thereto.

5. That during his sickness, while at Catawba Sanatorium, and while he was sane, he asked to be returned

to his home in Bedford, and was only prevented therefrom by the orders of his physician.

6. That he died October 18, 1924, at Catawba, in Roanoke county, after he had been physically absent from Campbell county for about five months, and after he had asked to be returned, not to Campbell, but to Bedford, which was in accordance with the intention that he had expressed twenty years prior to that time, namely, that when he quit work or became incapacitated by sickness, he expected to spend his remaining years at his Bedford home.

There is certainly the suggestion, if not satisfactory proof, that when he went back to Lynch station for the last time prior to his death and personally adjusted his accounts with the auditor sent for that purpose by his employer, the railway company, he intended to abandon Campbell county as a place of residence, for the chief if not the sole business which had kept him there for forty years had been terminated, and hence it can be fairly argued that for five months before his death he had no mansion house (residence) or known place of residence, in Campbell county. While this action would not be sufficient to prove a change of legal domicile, because of the presumption that the old domicile continues until a new one is acquired, it certainly makes doubtful the claim that his residence continued to be in Campbell county.

*In re Murray's Estate*, 145 Iowa 368, 124 N. W. 193, is certainly persuasive. There the decedent was clearly shown to have been a resident of Tama county for some time. A few days before his death, however, he removed to Benton county, where he died, and administration was granted in Benton county. Thereafter, another set of administrators was appointed in Tama county, his former residence, and these administrators attacked the appointment of the Benton county

administrator, and the court held that as he had moved
from Tama county, the mere fact that he may not
have acquired a new residence in Benton county did
not confer upon the Tama county administrators the
right to question the Benton county appointment,
because whatever else might be said the Tama county
court itself had no jurisdiction. And this is said:
"If decedent actually removed from Tama county with
a definite intention of not returning, then the court of
that county had no jurisdiction to grant administra-
tion of his estate, and properly refused to entertain
the supplementary proceedings against the defend-
ants, and the question whether there was such resi-
dence in Benton county (the county in which decedent
died) as to justify the administration of his estate in
that county was really immaterial."

[7, 8] The peculiar facts of this case, which, because
of the legal presumption that a man retains his former
domicile until he acquires a new one, are insufficient
to show a change of domicile, are nevertheless sufficient,
we think, to show that he had abandoned his mansion
house or residence in Campbell county, and that he had
no intention of returning to that former domicile.
These facts, however, may not be sufficient to show
that he had changed his residence to Bedford county
and that at the time of his death his mansion house and
residence was the former home of his father, to which
he was intending ultimately to return and to which he
expressed the desire to be taken. What then is the
effect of this upon the impartial mind, except to in-
dicate that here is a decedent who, because of his
abandonment of his former residence in Campbell and
failure to execute his intention to adopt Bedford as his
residence, had no mansion house, or known place of
residence in either county at the time of his death.
If this be a fair deduction, and we think it is, then the

court of either county would have jurisdiction to appoint his administrator, because he had real property in both counties.

There is another feature of the case which should be noted: After the appointment of the defendants, Spiller and Berkeley, upon the motion of those who represent two-thirds in interest of the distributees of the decedent, all of the distributees, including the plaintiffs, were convened, and these plaintiffs signified their assent to the appointment which had already been made in Bedford county. They also agreed to the disposition of the furniture. One of the plaintiffs agreed to inspect an iron safe, with a view to buying it if it suited him, and an automobile was appraised by three of these distributees. All of this was done with the assent, agreement and participation of these plaintiffs, both being present. This may not create a legal estoppel, but it certainly does not present a situation in which any court should be swift to undo what has been so done with their acquiescence.

Upon the whole case, we think it fair to conclude from the evidence that the decedent had, while he had the capacity to choose his place of residence, abandoned his mansion house or known place of residence in Campbell for more than five months before his death, and that he did not intend to resume his residence there. He may not have acquired another mansion house or known place of residence in Bedford at the time of his death, but he certainly had real estate in that county and this we conclude, under the facts of this case, conferred jurisdiction on the Bedford court to make the appointment.

For the reasons which we have indicated, we are of opinion that the order should be affirmed.

*Affirmed.*