COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


MICHAEL FREDERICK JONES

v.    Record No. 2003-02-1

REBECCA LYNN WEBB JONES

MEMORANDUM OPINION* BY
JUDGE D. ARTHUR KELSEY
MARCH 18, 2003

FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

Roy H. Lasris (Lasris & Vannan, P.C., on
briefs), for appellant.

James A. Carter, II, for appellee.


Michael F. Jones contends that the trial court lacked jurisdiction under Code § 20-97 to adjudicate this divorce proceeding because his wife, Rebecca L. Jones, was not a Virginia domiciliary during the six months preceding her filing of the bill of complaint.  Finding no error in the trial court's decision, we affirm.

I.

Michael and Rebecca Jones were married in Tennessee in 1994.  They lived in Tennessee at the time of the marriage, and both became employees of Cable Com, Inc.  In 1998, the parties purchased a home in Lancing, Tennessee.  At about the same time,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Cable Com transferred them to Florida.  They lived in the Lancing home "for maybe twelve nights total" before moving to Florida.

While in Florida, the couple obtained a bank account at a local branch of NationsBank (now Bank of America) and purchased a boat, which they registered in Florida.  The couple, however, retained their Tennessee drivers' licenses and vehicle registration.  They also listed their Lancing house as their home of record for employment purposes.

In 1999, the couple accepted an assignment to a Cable Com job in Virginia.  As far as Rebecca knew, the Cable Com contract in Virginia was "indefinite [in] nature."  As a result, she intended to "remain in Virginia indefinitely" until her job required her to move again.  Michael and Rebecca rented a house in Williamsburg for approximately one year and transferred their bank account to a local Virginia branch of NationsBank.  Rebecca testified that she intended to pay income tax on her Virginia taxable income, though no evidence of actual payment appears in the record.

On August 5, 2000, Michael moved out of the Williamsburg home and later moved back to Tennessee.  Rebecca remained in Virginia and moved into an apartment with a one-year lease term.

On August 11, 2000, Rebecca filed a bill of complaint for divorce a vinculo matrimonii in York County Circuit Court.  She alleged, among other things, that she had "been an actual bona

-

fide resident and domiciliary of the Commonwealth of Virginia for at least six (6) months next preceding the commencement of this suit."  Michael filed an answer unconditionally admitting this allegation.

Four months later, during a pendente lite hearing in December 2000, Rebecca sought exclusive possession of the Lancing house.  During the hearing, Rebecca stated her desire to return to Tennessee when her job assignment in Virginia ended.  Based on this contention, Michael objected to jurisdiction pursuant to Code § 20-97, which provides that "[n]o suit for annulling a marriage or for divorce shall be maintainable, unless one of the parties is and has been an actual bona fide resident and domiciliary of this Commonwealth for at least six months preceding the commencement of the suit."  The trial court deferred ruling and directed that Rebecca be deposed on the issue of domicile.

During her deposition, Rebecca acknowledged that Tennessee was still her home of record for employment purposes.  She also retained her Tennessee driver's license, renewed her automobile registration in Tennessee, and identified Tennessee as the place where she kept her vehicle for insurance purposes.

Despite repeatedly referring to Tennessee as her "home," Rebecca clarified that she considered Tennessee to be her "heart home," the place she was "born and raised."  In this sentimental sense, she explained, "home will always be Tennessee . . . [n]o

-

matter where I'm at."  "That is where I grew up.  But I live here."  With respect to the house in Lancing, Rebecca explained that she and her husband "have never lived there" and used it mostly as a vacation home.  All utility bills for the Lansing house were sent to the couple's Virginia address.

When directly questioned about her intent when she came to Virginia, Rebecca testified:

> Q:   Okay, when you first came to Virginia,
>      did you consider Virginia then to be
>      your home?
>
> A:   Yeah.
>
> Q:   Okay.  And so on October 8th of 1999,
>      you believe you established a
>      residency, a domicile in Virginia?
>
> A:   Yes.  We leased a house here.
>
> *     *     *     *     *     *     *
>
> Q:   All right.  When you filed the Bill of
>      Complaint in Virginia, did you intend
>      to be a Virginia resident and
>      domiciliary and to use the court of
>      Virginia when you filed for divorce
>      here?
>
> A:   Yeah.
>
> Q:   And why did you do that?
>
> A:   Because I live here.  I mean, I can't
>      go back to Tennessee, you know, and –
>      that doesn't make any sense.  I live
>      here.

Rebecca also testified that, after her separation, Cable Com gave her an opportunity to move to California, Kansas, or

-

Louisiana.  When she learned that Michael was leaving the state, Rebecca elected to remain in Virginia.

At a later ore tenus hearing, the trial court reviewed Rebecca's deposition and took additional testimony on the domiciliary issue.  At the conclusion of the hearing, the court overruled Michael's objection to jurisdiction and found, "upon consideration of the testimony and the depositions," that Rebecca met the requirements of Code § 20-97.

## II.

For purposes of Code § 20-97, the "determination of domicile and bona fide residence is a mixed question of law and fact, reviewable on appeal."  Adoteye v. Adoteye, 32 Va. App. 221, 226, 527 S.E.2d 453, 456 (2000).  Though the "fact finding component of that determination is given deference," we review the law component de novo.  Id.  Applying this standard of review, we find no error in the trial court's ruling.

"Domicile contemplates living in a place with the intent to remain there permanently or for an indefinite period of time."  Adoteye, 32 Va. App. at 226, 527 S.E.2d at 455-56 (quoting Rock v. Rock, 7 Va. App. 198, 202, 372 S.E.2d 211, 213 (1988)).  Once acquired, domicile "continues to exist until another is acquired elsewhere."  Talley v. Commonwealth, 127 Va. 516, 520, 103 S.E. 612, 614 (1920).  To acquire a new domicile, "there must be an actual abandonment of the old domicile, coupled with an intent

-

not to return to it, and also a new domicile acquired at another place, which can only be done by the union of intent and personal presence." Id. "Intent is to be inferred from declarations and from conduct." Guilfoil v. Hayes, 169 Va. 548, 556, 194 S.E. 804, 807 (1938) (quoting Bowen v. Commonwealth, 126 Va. 182, 190, 101 S.E. 232, 234 (1919)). When in conflict, evidence of "acts and conduct showing intent" may outweigh inconsistent "declarations or expressions of intent." Id.

Under Code § 20-97, the requisite intent to be a Virginia domiciliary must exist during the six-month period immediately preceding the commencement of the suit. If Rebecca genuinely had this intent but decided to abandon her Virginia domicile the day after filing suit, she nonetheless would satisfy the statutory requirements under Code § 20-97. Our focus, therefore, must be on Rebecca's intent during the six months preceding the filing of her divorce complaint.

We begin with Rebecca's declarations of domiciliary intent. In 1999, she left an ongoing job in Florida to come to Virginia. Rebecca testified that she "established a residency, a domicile" in Virginia and considered it to be her new home. The trial court could, and no doubt did, discount her sentimental remarks about Tennessee as merely an expression of an emotive bond with that state —— the place where she was born and raised.

In addition to reviewing Rebecca's deposition, the trial court heard additional testimony at the ore tenus hearing. No

-

transcript of that hearing appears in the record.  The trial court's statement of facts, however, states that its decision rested on "consideration of the testimony and the depositions." We place great weight on a chancellor's ore tenus findings, which are "peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record."  Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003) (citations and internal quotation marks omitted).

We next turn to Michael's declarations concerning Rebecca's domiciliary intent.  In the trial court, Michael made an unqualified admission in his responsive pleading of Rebecca's Virginia domiciliary status.  Michael argues on appeal, and we certainly agree, that he cannot consent to subject matter jurisdiction of the court.[1]  The trial court, however, did not treat Michael's concession as a waiver of his challenge to jurisdiction.  Nor do we.  It is simply an evidentiary admission by a litigant to be given whatever weight the fact finder

---

[1] See generally Commonwealth v. JOCO Found., 263 Va. 151, 160, 558 S.E.2d 280, 284 (2002); Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001).  It is because subject matter jurisdiction "involves a court's power to hear a case" that challenges to it "can never be forfeited or waived."  United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781, 1785 (2002).

determines just —— much like a party admission in a deposition or one made from the witness stand.  Cf. Davis v. Davis, 206 Va. 381, 384, 143 S.E.2d 835, 837 (1965) ("Thus corroborated, the testimony of both the parties to the suit was entitled to be given practical effect, especially since there is not the slightest suggestion of collusion in the record.").

After all, at the time of the admission, Michael knew of the Tennessee vacation home, the vehicle registration, and the discussions he had with his wife about the move to Virginia. Knowing that, Michael still admitted without qualification that she was a Virginia "resident and domiciliary" during the six months prior to the divorce complaint.  If Rebecca's intent were different, Michael was certainly in a position to know.  We thus find his admission has evidentiary weight and can be considered along with the other facts of the case.

Finally, we consider Rebecca's conduct as it relates to her domiciliary intent.  We agree with Michael that her Tennessee vehicle registration, her employment home of record, her sentimental attachment to Tennessee, and similar facts together raise a permissible inference that Virginia was a temporary sojourn for Rebecca.  We do not believe, however, that this inference —— however strong it may be —— precludes as a matter of law the finding of Virginia domiciliary status given the other facts and circumstances in this case.  In themselves, these discordant facts are not enough to require a fact finder

-

to disbelieve Rebecca's declared intent and those additional circumstances (such as Michael's concession) that corroborate her domiciliary intent.

## III.

In sum, the evidence supports the trial court's conclusion that Rebecca Jones was a domiciliary of Virginia during the six months preceding the filing of her complaint. For this reason, the trial court correctly concluded that it had jurisdiction under Code § 20-97 to adjudicate this divorce case.

<u>Affirmed.</u>

-