MERRIMON, J., dissenting.
The plaintiff having recovered judgment against the defendant in the court of a justice of the peace, in the county of Sampson, and caused it to be docketed in the Superior Court, sued out an (312) execution thereon, under which the tract or lot of the defendant was, in July, 1887, sold and conveyed to the plaintiff without assigning him a homestead. At the time of sale no claim was made thereto, but the defendant, according to the sheriff's return, then residing at Little River, in South Carolina, was notified by mail of the sale. In February, 1888, the defendant applied by petition to the Superior Court upon the *Page 263 
allegations of fact therein contained, for an order setting aside the sale and vacating the deed of the sheriff, and for the appointment of commissioners to lay off and assign to him a homestead in the lot. Accompanying the petition is his affidavit, in which he says that he is a citizen and resident of this State, and that his removal to South Carolina was for a definite period of time, with no intent to make that his permanent home, but to return, and that such is his present purpose, after a short sojourn. Notice was given to the plaintiff of an intended motion to this effect, to be made before the judge on 2 March, 1888.
At April Term, 1888, the application was heard, and a single issue submitted to the jury, to wit: Was the petitioner, A. A. Moseley, a resident of the State of North Carolina on 4 July, 1887?
The testimony of the defendant was to this effect:
"I was born and raised in Sampson County; resided in New Hanover on 4 July, 1887, and reside there now. I own no real estate except this described in the petition. I owned this in July, 1887." Upon cross-examination he stated: "I am fifty-three years old; have a wife and one child; left them in Horry County, S.C., last Sunday. She went there on 17 February, 1887. My child is seventeen years old. My wife has two other children who are of age; one of them is in New Bern, and the other is with her; she owns about three thousand acres of land in South Carolina, and is living on other land in which she has an interest; I am farming on the 3,000 acres; I made a general crop on the same last year, and superintended its cultivation; I am cultivating (313) also the land on which she lives; I went over to South Carolina when she did, and carried horses, mules, furniture and farming implements; I left some of the furniture in New Hanover, and some other things inconvenient for me to carry — some carts and a few hogs; I came back to Wilmington, N.C. two or three times, and got some supplies for my farms in South Carolina; I did my trading in Wilmington, N.C. and went down to see the party I left on the New Hanover place. These farms were rented, and were going down when the division was made; there was only a small house on my wife's part; I couldn't find any one to South Carolina; that I could fix the place in two years so as to get rent; I told numerous parties before I left that I was going to move to South Carolina; I left South Carolina last Sunday to come here to this court; I have crops on both places in South Carolina for the present year; I was confident I could fix the place in about two years; I expected to return in the winter of 1888, and I still expect to return and make my residence in North Carolina; I have never intended to change my *Page 264 
residence; I was a justice of the peace in New Hanover, 4 July, 1887; I haven't tried a case since I left for South Carolina, and have not transacted any business as a justice of the peace.
The counsel for petitioner asked the court to instruct the jury as follows:
That if the defendant left New Hanover County to go to South Carolina for the purpose of remaining there for a definite period, to wit: for the period of two years, and at the time of such removal he intended to return at the expiration of such period, and that he did not at any time intend to change his residence, except for the foregoing purpose, (314) then the defendant was an actual resident of New Hanover.
The court declined to give this instruction, but gave the following:
If in February, 1887, the petitioner Moseley moved with his family to South Carolina for the purpose of cultivating his wife's land there, and to make it his home until he got the property there in order, which he thought would take about two years, and then return to North Carolina, and he has so lived in South Carolina ever since, and is now living there, making that his actual home, returning to Wilmington only two or three times a year to purchase supplies for his operations in South Carolina, and looking after some property he had left in New Hanover County, then you will find that he was not a resident within the meaning of this issue.
The jury answered the issue, "No."
There was judgment dismissing the petition, and defendant appealed.
The Constitution of the State confers a right of homestead in land, which shall be for a limited time exempt from execution or other final process obtained on any debt, with the dwelling and buildings used thereon,"owned and occupied by any resident of this State," not exceeding one thousand dollars in value — Cons., Art. X, sec. 2 — and the only inquiry the appeal requires us to make is, as to the correctness of the construction put upon the words, "a resident of this State," by the judge in his charge to the jury.
We think it clear that the Constitution does not contemplate a double or divided residence in different states, so that if a similar (315) exemption is provided in each, a party can have his exemption allotted to him in both. The preceding qualifying words, limiting the claim to a lot "occupied" as well as "owned" by a resident, forbids its assertion in a case like the present, when all the facts, outside of the *Page 265 
defendant's declared intent, point to an absolute and permanent removal. Can there be any doubt that a person removing, under like circumstances, from South Carolina into this State with his family and domestic implements and furniture into a dwelling on land of his wife, which he cultivates for two successive years, would thereby become a resident entitled to all the rights incident thereto? Or, if the removal was to other lands of his own, such occupation would not secure to him a homestead, therein, of which a creditor could not deprive him? If he would thus acquire a right to an exemption in the State to which he goes, of necessity he loses it in the State from which he removes, for under similar laws he could not have it in both. So, when all the acts of the debtor show an actual removal, as they do in this case, an effort to secure a constitutional exemption could not be thwarted by proof of declarations of an intent inconsistent with those acts in which it is expressed. In like manner a secret or avowed intent to return to a forsaken home, when one has been acquired in another State, cannot preserve a privilege accorded to one who has a present and existingresidence, and only so long as that residence lasts.
Very little aid can be derived from the law of domicile, and little more from the adjudications in other states, where the homestead is deemed a home protected from the creditor only when occupied as such, and ceasing when the place is no longer the debtor's home.
"When a resident removes from the State and becomes a resident elsewhere," remarks Merrimon, J., in Baker v. Leggett, 98 N.C. 304, "he thereby abandons — relinquishes — his right of homestead; as to him, it becomes suspended — he ceases to be within the terms, the purpose, or spirit of the constitutional provision, and all the property, (316) both real and personal, that he may leave behind him, becomes at once subject to the satisfaction of his debts."
The same proposition is enunciated by the Court in Munds v. Cassidey,98 N.C. 558, where the party had been absent seven or eight years, employed on board a steamboat in Florida, yet intended to return in the future to his former home in Wilmington. In reference to this point, the Court say:
"Our Constitution and statute do not extend to such a case. The person must be a resident actual and not constructive, to be entitled to the exemption. This is made clear by the section securing the homestead to insolvent debtors, when "owned and occupied by any resident of this State." The benevolent provision is for our own citizens — those who have a residence among us — and must be construed as not embracing cases of mere domicile, when the rights incident to domicile may be retained until a domicile is obtained elsewhere." *Page 266 
It suggested itself during the argument that perhaps the question of intent should have been left to the jury in determining whether the first residence is retained, so as to secure the home of the debtor for his occupation when he should return. But upon further consideration we approve of the form of the charge, because all the facts, forming the hypothesis upon which the construction is predicated, develop an intent to change, as in fact the debtor does change, his residence, and the effect of his acts cannot be defeated by his declaration that he did not so intend. It is important that legal rights should rest upon facts proved, with their attending consequences, and not upon an undisclosed purpose at variance with them. So we are of opinion that the enumerated facts do in law, if so found by the jury, constitute a change of residence under this clause of the Constitution.
There is no error, and the judgment is affirmed. (317)