Note.—See under (1) 31 Cyc. p. 289; 21 R. C. L. p. 519; 6 R. C. L. Supp. p. 1272. (2) 4 C. J. p. 853, §2834. 27 C. J. p. 72, §208; 37 C. J. p. 1260, §795; 12 R. C. L. p. 444; 2 R. C. L. Supp. p. 1428; 4 R. C. L. Supp. p. 758; 5 R. C. L. Supp. p. 644; 2 R. C. L. p. 193. (3) 37 C. J. p. 1243, §769; p. 1260, §795. (4) 27 C. J. p. 51, §181; 5 R. C. L. p. 1089; 1 R. C. L. Supp. p. 1592; 5 R. C. L. Supp. p. 313.

---

## YOUNGBLOOD v. RECTOR et al.

No. 17443. Opinion Filed June 14, 1927.

Rehearing Denied Sept. 27, 1927.

(Syllabus.)

**1. Wills—Proceeding to Probate Will of an Equitable Nature — Review — Sufficiency of Evidence.**

Proceedings to admit a will to probate are in the nature of an equitable action, and on appeal this court will weigh the evidence, but will not reverse the judgment of the trial court, unless said judgment is clearly against the weight of evidence.

**2. Domicile—Requisites to Change of Domicile.**

To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place with intention of making it a permanent home.

**3. Same—Proof of Domicile—Declarations of Party.**

Declarations made by a party whose domicile is in dispute, whether oral, in a deed,

will, or other document, may be considered in connection with other facts of the case as an index of his intention, but ordinarily they are the poorest species of evidence.

### 4. Judgment not Sustained.

Record examined, and held, the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Caddo County; E. L. Mitchell, Assigned Judge.

Proceeding by Emma A. Youngblood to have will of J. M. Youngblood admitted to probate; Anna Rector et al. contesting. From a judgment of the district court reversing the judgment of the county court and refusing to admit the will to probate, the proponent appeals. Reversed and remanded, with directions.

Morris, Johnson & Wilhite, for plaintiff in error.

Pruett & Wamsley, W. H. Starkweather, and Melton & Melton, for defendants in error.

MASON, V. C. J. On July 20, 1925, the plaintiff in error herein filed a petition in the county court of Caddo county to probate, as a domiciliary will, the will of her deceased husband, J. M. Youngblood. She did not have the will, but gave notice to produce.

The defendants in error herein, the children of J. M. Youngblood by a former marriage, contested the probate of the will in Caddo county as a domiciliary will, contending that J. M. Youngblood was a resident of the state of Missouri at the time of his death.

The county court, upon hearing, found the facts to be such as would substantially meet all requirements of the statutes, and ordered the will admitted to probate, but the district court, on appeal, reversed the judgment of the county court and refused to admit said will to probate. The proponent of said will has duly perfected her appeal to this court.

It is conceded by both parties that the sole issue involved herein is the domicile of J. M. Youngblood at the time of his death. The county court found that his domicile was in Oklahoma, while the district court held it was in Missouri. If his domicile was in Missouri, these proceedings must fail, and the judgment of the district court refusing to admit the will to probate must be affirmed, but if his legal domicile was in Caddo county, Okla., at the time of his death, the judgment of the district court must be reversed and that of the county court should stand.

It appears that the controversy is brought about by reason of the fact that under the terms of the will the proponent is given a one-fifth interest in said estate during her natural life only, and if the testator's domicile was in Missouri at the time of his death, the proponent's interest in the estate is fixed by the will, but if the legal domicile of the deceased at the time of his death was in Oklahoma, the proponent, under the laws of this state, would be entitled to one-third of said estate, regardless of the terms of the will.

Some contention is made by defendants in error that, if there is any competent evidence in the record supporting the judgment of the district court, it must be affirmed by this court. This, however, is not the correct rule. This is a special proceeding in the nature of an equitable action, and this court will weigh the evidence, but will not reverse the judgment of the trial court, unless said judgment is clearly against the weight of evidence. Hixon v. Hubbell, 4 Okla. 224, 44 Pac. 222; Holt v. Murphy, 15 Okla. 12, 79 Pac. 265; Eager v. Seeds, 21 Okla. 524, 96 Pac. 646; Marrs v. Barnes, 55 Okla. 590, 155 Pac. 560; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 Pac. 210.

This rule, however, is based upon the theory that the trial court sees the witnesses and is in better position to weigh the evidence than is the appellate court, but in the instant case it appears that practically all of the evidence in the district court was either by deposition or other record evidence, and, therefore, the reason for the rule is absent. In this connection it might be well to call attention to the fact that it appears that practically all of the witnesses who did not appear in person in the district court did so appear in the county court.

The facts in the case, as established by the evidence, are substantially as follows:

James M. Youngblood was born in Arkansas about 1856, the youngest of five brothers. During the Civil War the family moved to Missouri and located at Republic, a small town near Springfield. Shortly after moving to Missouri, the father and mother died, leaving the five brothers as the survivors of the family, James M. Youngblood being about eight years of age and the oldest brother being about 21 years of age at that time. The brothers continued to live together until the oldest brother married, after which all the

brothers lived with him until they were grown. In 1900, James M. Youngblood was engaged in the general mercantile business at Republic and his family consisted of his wife and four children, the defendants in error herein. In 1901, he and his fami.y came to Oklahoma to the opening of the Kiowa, Comanche, and Apache Indian country, and located at Anadarko. Some time thereafter, James M. Youngblood and his wife separated and she returned to Missouri, where she died some years later.

In 1905, James M. Youngblood and the plaintiff in error, Emma Youngblood, were married at Anadarko. It appears that the deceased and his wife, the proponent of the will, have, since their marriage in 1905, toiled and labored together at Anadarko, enduring all the hardships and inconveniences ordinarily encountered in the development of a new country, and by their incessant toil, economy, and good management had accumulated property of the approximate value of $125,000 at the time of his death. In 1914, the deceased purchased a farm near Anadarko and, after erecting a comfortable house, he and his wife moved upon the farm, and in addition to conducting other business in which they were interested, they farmed this place until about five years prior to his death, when they rented the farm, but always reserved part of the house for their own occupancy and at all times have kept the principal part of their household goods at this place.

A short time after their marriage, Mr. Youngblood disposed of his mercantile business, and after paying the outstanding indebtedness very little remained. He and his wife then opened a music store with a very, small stock—mostly second-hand instruments. They had light housekeeping rooms equipped in the same building which they occupied until the farm near Anadarko was purchased and thereafter continued to occupy these rooms when the weather was too disagreeable to make the trip to the farm.

In 1910, Mr. Youngblood purchased business property in Anadarko and about the same time purchased a one-half interest in the local agency for the sale of Ford cars. This automobile business grew rapidly and proved to be very profitable. He was engaged also in other business at Anadarko, including the banking business, and owned several farms in that vicinity. He also was a member of local fraternal organizations and was registered there as a voter.

Since 1915, the deceased and his wife, on account of the hot weather in Oklahoma, have spent their summers in Springfield, Mo. In 1919, the deceased bought a half interest in a rooming house in Springfield, and thereafter occupied a part of it during these visits, until after the death of his brother, in the spring of 1923, who owned the other portion, when he disposed of his interest. Soon thereafter, he purchased 40 acres of land near Springfield, paying therefor $8,000 cash, and assuming a mortgage of approximately $14,000. There was a tenant on this property when it was purchased and Youngblood and his wife occupied a portion of the house for a few weeks. after which they returned to Anadarko for the winter. In the latter part of February, 1924, another brother of the deceased, who lived near the Missouri property, took seriously ill and, in response to a wire, Mr. and Mrs. Youngblood went to Missouri the latter part of February, 1924, and stayed at the brother's house until some time in April, when he died. After the brother's death, Mr. Youngblood and his wife decided to stay in Missouri during the remainder of the summer months and moved onto the property he had purchased the previous summer, using most of the furniture and household goods of the tenant who also resided thereon, although they purchased and used some cheap furniture in addition to that of the tenant. It also appears that they brought most of this with them when they returned to Oklahoma that fall.

After the deceased purchased the 40-acre tract, he told some of his friends and his children that he expected to move there and make his home as soon as he could dispose of his business and property in Oklahoma. During the time he was in Missouri, he told other parties that he was living there. After the death of his brother in 1924, and while he was still in Missouri, Mr. Youngblood had an attorney prepare the will in question, which he signed, and wherein it is recited, "I, J. M. Youngblood, of the City of Springfield, County of Green, State of Missouri." He also made application for insurance wherein he referred to himself as J. M. Youngblood, of Springfield, Mo.

On April 25, 1925, when the deceased and his wife were starting to Missouri, he stated that since his brother had died he had lost his interest in going to Missouri, and if it were not for selling the place, he would not go. He then had his wife get the deed and abstract to the Missouri property, which they took with them so as to be prepared to close a deal in case they could make a sale.

There is also evidence that after arriving in Missouri and just a few weeks before he took sick deceased stated that since his brother had died he wanted to sell his Missouri property. While Mr. Youngblood was in Missouri on this occasion, he took sick and died on July 8, 1925, while occupying the property he had purchased.

Is the judgment of the district court clearly against the weight of evidence?

The general rule is that domicile is changed from one place to another, or one state to another, only by abandonment by a person of his first place of domicile with the intention not to return, and by taking up his residence in another place with the intention of permanently residing in that place. In other words, to effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home.

The rule is announced in 9 R. C. L. p. 540, as follows:

"In general terms, one may be designated as an inhabitant of that place which constitutes the principal seat of his residence, of his business pursuits, connections, attachments, and of his political and municipal relations."

The judgment of the district court seems to have been based upon the declarations of the deceased that he expected to make his home in Missouri and that he was **living** in Missouri. These statements were made shortly after acquiring the 40-acre tract near Springfield and before the death of his brother, who resided near that place and who, it seems, was his favorite brother. These declarations, however, must be considered in connection with the other facts of the case and as an index of the intention of the deceased, regardless of whether they were oral, in a deed, will or other document. They have been termed the lowest species of evidence. 19 C. J. 438.

After considering all the evidence relative to such declarations of the deceased, we think that it only establishes a desire to close out his business in Oklahoma and move to Missouri so as to be near his brother, but that before he could carry out his plans his brother died. There is nothing in the record to disclose that the deceased had any intention of changing his domicile to Missouri after the death of his brother, but the contrary appears, which is supported by the following circumstances:

A few weeks after his brother died, and about September 1, 1924, he and his wife returned to Oklahoma and took with them most of the scant supply of the household goods which they had acquired in Springfield. The next spring, before leaving Oklahoma to spend the summer in Springfield, as had been their custom for many years, Mr. Youngblood listed his personal property for taxation and claimed certain exemptions as a resident of the state of Oklahoma, and just before leaving he ordered a large supply of letter-heads and envelopes with his address printed thereon as Anadarko, Okla. He stated just before leaving that he had lost "his relish" for Missouri since the death of his brother, and that he wanted to sell the Missouri property, and for that reason asked his wife to get the deed and abstract so as to be able to close the deal while in Missouri. After arriving in Missouri, and just a few weeks before his last illness, he refused to list his personal property with the Missouri tax assessor, claiming to be a resident of Oklahoma.

Counsel for defendants in error make some contention that his residence at the time of his death was in Missouri by reason of the fact that the will recited such facts. The attorney who drew the will testified that he put that provision in the will without consulting the testator.

In the Matter of Golden, 82 N. Y. S. 990, the court said:

"The statements of residence in a holographic will are entitled to great weight, but in one prepared by an attorney, where he inserts the place of residence as in part a matter of form, such statement is not controlling."

Practically all of the property of the deceased had been accumulated and was located near Anadarko, Okla. With the exception of less than $100, which was on deposit in a bank in Springfield, all of his bank account was in the banks at Anadarko; the family pictures and all the permanent household goods were in the house on the farm near Anadarko. These circumstances and many others disclosed by the record, which it is not possible within the reasonable length of an opinion to discuss in detail, convince us that the deceased did not change his legal domicile from Anadarko, Okla., to Springfield, Mo., and at the time of his death he was only spending the summer there, as had been his custom for many years. Nor

is there any evidence that the deceased had actually abandoned his domicile in Oklahoma with the intention of establishing a permanent domicile in Missouri.

It, therefore, follows that the judgment of the district court is clearly against the weight of the evidence, and the same is reversed and the cause is remanded, with directions to admit the will to probate as a domiciliary will.

BRANSON, C. J., and HARRISON, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.