## ASHTON v. ASHTON.

No. 32048.　April 16, 1946.

Rehearing Denied June 11, 1946.

*169 P. 2d 565.*

O. A. Brewer and E. A. Blythe, both of Hugo, for plaintiff in error.

Lon Kile and Hal Welch, both of Hugo, for defendant in error.

OSBORN, J. On July 20, 1943, plaintiff, Jess Ashton, filed this action for divorce in the district court of Choctaw county. Service on the defendant, Ruby Ashton, was obtained by publication, and on September 13, 1943, a divorce by default was granted to plaintiff. On February 26, 1944, defendant filed a petition to vacate the decree, which petition was duly heard by the trial court and sustained. The trial court sustained the petition to vacate the decree on the ground that the evidence established that plaintiff was not a resident of Choctaw county at the time the suit was filed. Plaintiff appeals.

The sole question presented is whether, on the date the suit for divorce was filed, the plaintiff, Jess Ashton, was a resident of Choctaw county, as required by 12 O.S. 1941 § 1272.

From the evidence adduced at the hearing on the petition to vacate it ap-

pears that the parties, prior to their marriage, were residents of Texas, living near Burkburnett; that after their marriage, which occurred in 1939, when they were both in high school, they lived with Ashton's parents for approximately one year and then removed to a separate place near Burkburnett, and that plaintiff farmed that place for approximately one year. Early in 1942 plaintiff leased some land in Cotton county, Okla., just across the river from Burkburnett and some 25 miles distant therefrom, and the parties removed to Cotton county and farmed the land leased by plaintiff until they separated in June, 1943. When they separated defendant returned to the home of her parents in Texas, and plaintiff removed all the furniture from the house occupied by the couple, the furniture being taken to some place not disclosed by the evidence. At sometime during the month of June, 1943, plaintiff, accompanied by his grandfather, made a trip to Hot Springs, Ark., stopping off at Hugo, the county seat of Choctaw county, and spending almost a day in that city. Thereafter, on July 20, 1943, he returned to Choctaw county, employed an attorney and filed this action. After filing the action he returned to Waurika, to the home of his grandfather, where he stayed that night, and then went to Texas.

Plaintiff testified that he had some cows and a horse at the home of his father in Texas; that he and his father together were making a crop on some land near Burkburnett, and that he spent his time, after filing the suit for divorce, mostly at his father's residence, and some of it with a friend in Dallas. On the trips made to Hugo, when he stayed there overnight, he stopped at a tourist camp. He made no effort to establish a residence there, or to engage in any business or procure employment in Choctaw county. He had no property of any kind in that county. He testified that, except for his lawyer, he did not know the name of a single person in the county. He did not register there as a voter and, although registered under the Selective Service Act, he did not notify the draft officials of any change in his residence, which he had originally given as that of his father in Texas. He testified that he wanted to get away from Cotton county because of the humiliation occasioned to him by his wife leaving him, and that he thought Hugo would be pretty nice place to live. He declared at the trial that at the time he filed the suit for divorce he intended to make Choctaw county his permanent residence.

Plaintiff contends that no length of time is necessary to fix the residence contemplated by the statute if he is in fact personally in the county where the petition is filed, at the time it is filed, with the intent and purpose to make said county his residence. While, as an abstract proposition, this is correct, the evidence in the instant case not only fails to support the claim that he intended to make Choctaw county his residence at the time the action was filed, but clearly shows that he had no such intention.

Where the declarations of a party as to his intention are inconsistent with his actions, such declarations are not considered a high class of evidence and may be accorded but little, if any, weight. 9 R. C. L., p. 558, § 23; 17 Am. Jur., p. 643, § 92; 19 C.J., p. 438, § 76.

In Pope v. Pope, 116 Okla. 188, 243 249 P. 1110, the court, quoting from the case of Mitchell v. United States, 21 Wall. 350, 22 L. Ed. 584, cited as acts showing the intent to establish a residence the declarations of the party, the exercise of political rights, the payment of personnal taxes, a house or residence, and a place of business.

In Pope v. Pope, 116 Okla. 188, 243 P. 962, we held that in determining the fact of intention, the court could take into consideration all the movements, transactions, and attending circumstances of the parties involved in the question.

In Holmes v. Holmes, 186 Iowa, 336, 170 N. W. 793, 8 A. L. R. 534, cited and relied upon by plaintiff, the evi-

dence showed that plaintiff in that action, when she separated from her husband, lived in the State of Minnesota; that she left her husband, taking all her furniture with her, and removed to Iowa, where her parents lived, and took up her residence with an uncle living near her parents in order to enable her to look after a farm owned by her.

Although the hearing on the petition to vacate the decree was held more than six months after the petition in the action was filed, the record wholly fails to disclose any acts or conduct on the part of the plaintiff, during that period, designed or intended to carry out the effecting of a residence in Choctaw county. On the contrary, his acts and conduct, as admitted by him, are inconsistent with such intention, and contradictory thereof, and no excuse or justification for his delay in taking steps to establish a residence in Choctaw county is offered by him.

Affirmed.

HURST, V. C. J., and BAYLESS, CORN, and DAVISON, JJ., concur.