In the Matter of the Estate of RUDOLPH PETERSEN, Deceased.

Surrogate's Court, Queens County, January 14, 1948.

*Benjamin Barondess* for Albert Petersen, as executor of Rudolph Petersen, deceased, and another, petitioners.

*William E. Kennedy* for Johanna Petersen, respondent.

SAVARESE, S. In April, 1899, respondent married Peder Pedersen in Norway. After their arrival in the United States they established their residence in New York State. On March 5,. 1931, he instituted an action against her for a divorce in the District Court of Tulsa County, State of Oklahoma. Respondent, who resided in this State, was not personally served with

process nor did she appear in or contest the action. Service was made by publication. On April 16, 1931, her husband was granted a decree of absolute divorce from her upon grounds neither recognized in this State nor material in determining the issue presented here. Except for the period of his challenged residence in Oklahoma, Pedersen like respondent resided in this State. Both acted upon the decree as appears from their subsequent conduct. Less than four weeks after its entry Pedersen married Jennie Houghton at Lindenhurst, Suffolk County, State of New York, where both resided according to the record of their marriage. Respondent married Rudolph Petersen, the decedent herein, on October 22, 1933, at which time Peder Pedersen was still living.

The decedent died on June 18, 1947, leaving a last will and testament which has been probated. He was survived by two sons, one of whom was named and qualified as executor. Respondent, not content with the provisions made for her in testator's will, in which he describes her as " my wife ", " my said wife ", has filed a notice of election under section 18 of the Decedent Estate Law. Testator's sons seek a decree declaring the same void upon the ground that the respondent is not his widow. They assert that her marriage to their father was void because she then had a husband living and, in anticipation of her reliance upon the Oklahoma divorce decree, additionally allege that her husband, the plaintiff in the action, went to Oklahoma solely for the purpose of procuring a divorce, that he was not a bona fide resident of that State, that the divorce was fraudulently procured and that the court lacked jurisdiction to adjudicate his marital status. Whether or not the respondent is the widow of the decedent depends upon the validity of the foreign decree and the recognition here required to be given thereto.

The Oklahoma decree is prima facie entitled to full faith and credit and favored by a presumption of validity that persists until the basis of jurisdiction has been held to be nonexistent. (*Matter of Holmes*, 291 N. Y. 261, 273; *Pereira* v. *Pereira*, 272 App. Div. 281, 287.) A decree of divorce rendered in one State may be collaterally impeached in another by proof that the court which rendered the decree had no jurisdiction, even when the record of the proceeding in that court purports to show jurisdiction. (*Williams* v. *North Carolina*, 325 U. S. 226, 229; *Matter of Holmes, supra,* p. 273; *Pereira* v. *Pereira, supra.*) Under our system of law, judicial power to grant a divorce —

jurisdiction, strictly speaking — is founded on domicile. (*Williams* v. *North Carolina, supra,* p. 229.) Jurisdiction of a court to entertain a divorce action and render a binding decree therein must rest on a broader base than jurisdiction over the person of the parties. A requisite is jurisdiction over the marital *res,* in which the State as well as the parties has an interest. The authority of a court to dissolve the marriage bond, therefore, must rest upon the authority of the State over the marriage, requiring that at least one of the parties be a domiciliary of that State. (*Senor* v. *Senor,* 272 App. Div. 306, 310.) In determining the question of domicile, the courts of this State may inquire into the status of a party as a bona fide resident of the divorcing State. (*Matter of Bingham,* 265 App. Div. 463, motion for leave to appeal denied 290 N. Y. 929.) Where persons having no complicity in the divorce proceedings have legitimate interests in a determination of the validity of the divorce, they may arouse the State's interest and institute an inquiry, which our courts will entertain, to ascertain the validity of a divorce decreed by a foreign State as to persons alleged to have been at the time residents of this State. (*Senor* v. *Senor, supra,* p. 312.) Neither the petitioners nor their father were parties to the Oklahoma divorce action and the decree made therein is not conclusive upon them or their rights, here asserted, and may be challenged by them. (*Matter of Lindgren,* 293 N. Y. 18, 23; *Urquhart* v. *Urquhart,* 272 App. Div. 60.) The Oklahoma statute provides that " The plaintiff in an action for divorce must have been an actual resident, in good faith, of the State, for one year next preceding the filing of the petition, and a resident of the county in which the action is brought at the time the petition is filed." (Rev. Laws of 1910, § 4963, now incorporated in Oklahoma Statutes, 1941, tit. 12, Civil Procedure, § 1272.) The words " resident " and " actual resident " as used in the statute contemplate a residence and actual residence with substantially the same attributes as are intended when the word " domicile " is used. A residence of a permanent and fixed character is intended. (*Carpenter* v. *Carpenter,* 30 Kan. 712; *Beach* v. *Beach,* 4 Okla. 359; *Pope* v. *Pope,* 116 Okla. 188; *Burke* v. *Burke,* 119 Okla. 254; *Greer* v. *Greer,* 194 Okla. 181; *Ashton* v. *Ashton,* 197 Okla. 241.) The decisive issue is whether or not Peder Pedersen was domiciled in the State of Oklahoma and, in view of the presumptive validity of the decree, the burden of establishing that he was not fell upon petitioners.

The evidence adduced upon the hearing establishes that Peder Pedersen and Jennie Houghton maintained a joint home at Lindenhurst, Suffolk County, New York, for at least five years immediately prior to his obtaining the Oklahoma divorce decree. Jennie Houghton had a son, Harry, who testified that he visited his mother at Lindenhurst two or three times a week up and until her death in 1942; that he saw Peder Pedersen on such visits and during the period when he claimed that he resided in Oklahoma. Houghton further testified that he had obtained a divorce in Tulsa, Oklahoma, that he had merely lived for two or three weeks at his lawyer's home in Tulsa and all of which he related to Pedersen. Pedersen admitted that Houghton gave him the name of his lawyer, that he retained him and lived with him during his stay in Tulsa. Houghton also testified that his mother and he went with Pedersen to the railroad station, prior to his leaving for Oklahoma, and that Pedersen returned about three weeks later and exhibited his divorce decree to him. There was testimony from the secretary of the carpenter's union that his records disclosed that Pedersen was a member from 1924 to 1947, that his address last appearing thereon was Lindenhurst, Long Island, and that he had no record of an Oklahoma address. Pedersen, called as a witness by respondent, testified that he went to Oklahoma to obtain a divorce, that he so advised Jennie Houghton and that he had no other reason for going there. He did not take his carpenter's tools with him because he did not need them. He admitted that he did not notify his union or any one of his change of address, that he regarded Tulsa as a temporary residence and that he did not intend to stay there after he got his divorce. In the light of his admissions it is plain that Pedersen neither gave up his New York residence nor established one in Oklahoma. His only purpose in taking a train ride there was to procure a divorce. He never intended to make Oklahoma his fixed and permanent home. His acts and conduct were inconsistent with an intent to abandon his New York domicile. Upon all the evidence the court finds that Pedersen never acquired a bona fide residence in Oklahoma, that he went there solely to procure a divorce, which was fraudulently procured, that the Oklahoma court never acquired jurisdiction of the marital *res* and that its decree is not entitled to recognition here. Accordingly respondent's marriage to decedent was invalid and she cannot be regarded as his widow. The purported notice of election filed by her is declared void and no rights accrued to her thereunder. Her interest in the

decedent's estate is limited to that given her by his will. The order of discontinuance made by the Supreme Court on October 5, 1944, did not adjudicate the validity of respondent's marriage to decedent. Neither the admission of its validity in his answer nor his reference to respondent as his " wife " in his will are sufficient to establish her status as such. Even if either constituted an estoppel against him it would not preclude his children from challenging the Oklahoma decree and respondent's status. (*Matter of Lindgren,* 293 N. Y. 18, *supra.*) Submit decree accordingly on notice.