# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Oscar William Fox, Jr. v. Commonwealth of Virginia, Ex Rel., Etc.

January 16, 1967.

Record No. 6380.

Present, All the Justices.

*William King Mapp* and *N. Wescott Jacob*, for the appellant.

*D. Gardiner Tyler, Assistant Attorney General* and *A. R. Woodroof, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

The State Corporation Commission issued a rule against Oscar William Fox, Jr., herein referred to as Fox or defendant, requiring him to show cause why seven registration cards and seven identification markers, for his trucks operated in Virginia, issued to him by the Commission pursuant to § 56-304.1 of the Code, 1966 Cum. Supp.,[1] should not be surrendered for cancellation and Fox subjected to the penalties prescribed by § 56-304.12 of the Code.[2]

After hearing the testimony on November 9, 1965, the Commission entered its order finding that the defendant had secured from the Commission the registration cards and identification markers on his vehicles by falsely representing that he was not a resident of Virginia, and the Commission granted judgment in favor of the Commonwealth against the defendant in the sum of $5,494, which was allowed to be satisfied by his purchasing Virginia license plates from the Division of Motor Vehicles and paying therefor the sum of $5,494. The Commission also assessed a penalty of $500 against the defendant and canceled all the registration cards and identification markers issued to him by the Commission. From this judgment the defendant was awarded an appeal of right, Constitution of Virginia, § 156 (d).

In its written opinion the Commission stated that the case turned on whether Fox was a resident of Virginia or of Delaware, and that he had obtained identification markers for his vehicles by representing to the Commission that he was a resident of Delaware.

The rule was issued against Fox following an investigation conducted by Trooper James S. Baird, of the Virginia State Police, whose duty it was to check operations of motor vehicles on Virginia highways and to investigate the locations of the operators of those vehicles.

On May 25, 1965, on North Main street in Chincoteague, Vir-

---

(1) This section as last amended by Acts 1964, ch. 252, provides that no person shall operate or cause to be operated for compensation on any highway in this State, *inter alia*, any road tractor or tractor truck, or any truck having more than two axles, which is not required to display Virginia license plates, unless there has been issued to the owner or operator by the State Corporation Commission a registration card and an identification marker for each vehicle so operated.

All motor vehicles operated on the highways of this State are required to register, pay the fees and display Virginia license plates as required by Title 46.1, ch. 3, of the Code, unless exempted by statute or reciprocity agreement.

(2) The penalty provided by this section as amended by Acts 1964, ch. 572, is an amount not exceeding $1,000, and the Commission may suspend or revoke the registration card and identification marker, and shall enter judgment against the defendant for any fee or tax found to be due.

ginia, Baird stopped a truck driven by Fox, whom he had known for several years when he was assigned to duty in Accomack county, where Chincoteague is located. He asked to see Fox's operator's license and registration card. With reluctance and some offensive language Fox complied and presented a Delaware operator's license which gave his address as 206 North Second street, Delmar, Delaware, and the truck displayed a Delaware registration number giving the same address. The truck also displayed a 1964 identification marker issued to Fox by the State Corporation Commission. The trooper later found in the Motor Vehicle Department in Delaware the record of eight trucks registered in the name of Oscar William Fox, Jr., 206 North Second street, Delmar, Delaware, all of which had been purchased in or near Chincoteague in Accomack county, Virginia.

In his investigation the trooper made road checks in Accomack county beginning May 25, 1965, and stopped vehicles which proved to be registered to Fox in Delmar, Delaware, but were driven by men who lived in the area of Accomack county. Baird also stated that on twenty of twenty-seven days beginning May 25, he found vehicles registered in Fox's name parked in Chincoteague, Virginia, "apparently during their leisure time."

Pursuing his investigation, the trooper learned from the telephone company that a Billy Fox (local name for the defendant) had an unpublished number at 614 South Main street in Chincoteague. A deputy sheriff who had known Fox all his life told the trooper that he thought defendant lived at 614 South Main street, Chincoteague, because he always saw his vehicles parked there. That was the address of an apartment owned by Fox's father-in-law.

The water register of Chincoteague listed "Bill Fox," 614 South Main street, Chincoteague, as a water user. Defendant admitted that he paid the water bill. The electric service for 614 South Main street, Chincoteague, was in the name of Mildred Fox, wife of Oscar William Fox, Jr. Fox admitted that he paid the electric bill.

On April 13, 1965, Fox procured a license for one of his trailers and gave his address at that time as Chincoteague, Virginia. His explanation of this was that "If there was a load that had to be picked up and consigned in Virginia, with Virginia tags on that trailer, I could lease a Virginia tractor from someone else."

The trooper testified that he himself had known Fox for seven or eight years and, as far as he was concerned, Chincoteague, Vir-

ginia, was where he lived and was where he would go if he wanted
to find him; and that he was regularly seen at Chincoteague.

Fox, who was twenty-four years old at the time of the hearing,
and who was the only witness for himself, took over a seafood and
produce hauling business from his father who had operated it from
Chincoteague. In 1960, he said, because of higher Virginia license
tax fees for his tractors and trailers, he rented a room in the home
of Joe Walker, at 206 North Second street, Delmar, Delaware, in-
tending to make his permanent residence there, and that he had been
living there ever since and had never changed his intent. He shared
this room, he said, with another trucker and as rental he furnished
seafood, which he estimated to be worth about $50 per month, to
Walker for use in the latter's bar and restaurant.

Defendant married a girl from Chincoteague and they had one
child a year and a half old at the time of the hearing. He testified
that his wife and child divided their time between the room in
Delmar, the apartment in Chincoteague owned by his wife's father,
and her parents' home in Williamsburg, Virginia. He said that he
stays in the room in Delmar from two to four nights each week
and that his wife and baby had been there at least seventy-five nights
during the year prior to the hearing. However, in response to a
question by his counsel as to whether his wife goes with him to
Delaware, he answered: "At times and sometimes her Mother is
sick down in Williamsburg and she stays over with her at times,
and she stays at Chincoteague." He testified that he had shared the
room with Page Walker, nephew of the owner of the house, since
1960. Asked what he did when his wife was there, his answer was
"Sometimes I have to get him a room, or I have to carry her out
and get her a room." There was only one bed in the room, he said,
but when his wife and baby were there Walker was not there "most
of the time." Walker, the owner, told the trooper that Fox's wife
and child had never stayed there and he had never seen them.

Fox testified that he had never voted in Delaware or in Virginia,
but that he files his Federal and State income tax returns in Delaware.
He testified that his trucks haul seafood out of Chincoteague every
day. Neither seafood nor produce is hauled out of Delaware, he said.

The Commission stated in its opinion that from observing the
defendant on the witness stand and hearing his testimony, it con-
cluded that he had testified falsely whenever he thought it would
bolster his case, and that "There can be no doubt that Oscar William

Fox, Jr., lives in Chincoteague, Virginia. He is away from Chincoteague driving over the highways much of the time, but always comes back to Chincoteague." The Commission's finding and its order are "prima facie just, reasonable and correct," Va. Const., § 156 (f).

It was the defendant's burden to establish that he had in good faith changed his domicile from Virginia, where he had lived prior to 1960, to Delaware. *Dotson* v. *Commonwealth*, 192 Va. 565, 572, 66 S.E.2d 490, 494. See also Code § 46.1-1 (16) (b) (c). The evidence in this case clearly fails so to establish.

While Fox testified that he intended to change his domicile from Chincoteague to Delmar, Delaware, the facts and circumstances effectively contradict that assertion. " 'Intent is to be inferred from declarations and from conduct. And it is a well settled rule that evidence of expressed intent has no controlling weight if such an intent is inconsistent with the acts and general conduct of the person. In such a case, acts and conduct showing intent outweigh his declarations or expressions of intent.' " *Guilfoil* v. *Hayes*, 169 Va. 548, 556, 194 S.E. 804, 807, quoting from *Bowen* v. *Commonwealth*, 126 Va. 182, 190, 101 S.E. 232, 234.

Defendant complains that Trooper Baird was allowed to give hearsay testimony. Some of his testimony was of that character, but in substantial part it was based on records kept in due course of business and examined by the trooper. In addition, practically all of the hearsay evidence was corroborated by the defendant's own evidence, an exception being the statement by Walker, owner and occupant of the house in Delaware, that he had never seen defendant's wife and child there. The evidence without this statement by Walker was ample to support the Commission's conclusion that defendant was not a resident of Delaware. The only evidence to the contrary was the testimony of the defendant, which the Commission found to be untrue.

We hold here, as in *Norfolk and W. Ry. Co.* v. *Tidewater Ry. Co.*, 105 Va. 129, 52 S.E. 852, that the reception of hearsay evidence in this case furnishes no sufficient ground for reversing the order appealed from.

The defendant states in his brief that "If the appellant was a resident of Virginia, the order complained of was correct." The Commission so found and we agree with that finding. Consequently it is not necessary to discuss the further contention of the Attorney

General that even if the defendant was a resident of Delaware he is not entitled, under the facts established by the evidence, to the reciprocity privileges extended by the Virginia statutes, Code §§ 46.1-131 *ff.*, or by the reciprocity agreement between Virginia and Delaware.

The judgment appealed from is

*Affirmed.*