PIKE COUNTY SCHOOL DISTRICT NO. 1 ET AL *v.* PIKE COUNTY BOARD OF EDUCATION ET AL

5-4938                                    444 S. W. 2d 72

Opinion delivered August 25, 1969

*James A. Buttry,* for appellants.

*Joe H. Hardegree,* Prosecuting Attorney, for appellees.

*Arnold & Arnold,* for intervenors Harmon O. Davis et al.

LYLE BROWN, Justice. This appeal stems from a school consolidation election in Pike County. The question on the ballot was whether a small district designated as Pike County School District No. 1 would be consolidated with a larger district, commonly referred to as the Glenwood District. The election was held June 18, 1968. The certified vote from the Glenwood area was overwhelmingly in favor of consolidation, whereas the official returns from District No. 1 showed the voters evenly divided. A favorable vote in both districts being necessary to effect consolidation, the county board of education certified the consolidation to have failed. A contest filed by the officials of the two school districts attacked the qualifications of three voters who cast ballots in District No. 1 against consolidation, asserting that the voters did not meet the requirement of residence set forth in our Constitution, Art. 3, § 1. The trial court upheld all three votes, affirmed the county board in all respects, and the two school districts appeal.

The sole question in this cause—No. 4938—is the validity of the three challenged votes. During the pendency of this case in the lower court a petition purportedly signed by a majority of the qualified electors of District No. 1 was filed with the county board. That petition sought annexation to the Kirby District. Annexation was approved and appealed here. An opinion in that case—No. 5001—is being rendered today.

Before discussing the facts relating to the challenged votes a brief summary of our constitutional and case law relating to voting residency is in order. Our Constitution restricts the voting privilege to those who have resided in the State twelve months, in the county

six months, and in the precinct, town, or ward, one month immediately preceding any election at which the citizen proposes to vote. Election contests are tried by the court without a jury. We are committed to give the trial court's findings on residency the force of a jury verdict. Consequently those findings are upheld if there is substantial evidence to support them; and that is true even though we might have reached a different conclusion had we been in the position of the trial court. *Phillips* v. *Melton,* 222 Ark. 162, 257 S. W. 2d 931 (1953).

There are two important features in resolving the asserted validity of voting residence. First, there is the intent of the voter with respect to residency. Secondly —and equally important—is that the conduct of the voter must be reasonably consistent with his asserted residency. For example, we held in *Phillips* that the elector was eligible to vote in Franklin County notwithstanding he moved to Sebastian County sixty days before the election. That was because he convinced the trial court that his work in Sebastian County was temporary and there was no intention of surrendering Franklin County as his permanent residence. In other words, his assertion of residency was found to be consistent with his conduct and we refused to reverse. On the other hand, the inconsistency of asserted intention with conduct is pointed up in *Harris* v. *Textor,* 235 Ark. 497, 361 S. W. 2d 75 (1962). There the Cartrights had lived in Pulaski County so long as to make their conduct inconsistent with their assertion that they never intended to give up their voting residence in Greene County. To the same effect see *Wood* v. *Brown,* 235 Ark. 500, 361 S. W. 2d 67 (1962). In special cases an extended absence will not necessarily cause a forfeiture of voting residency. We have so held in cases involving a voter in government service, college students, and young men enrolling outside their county in a government conservation camp. *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161; *Wilson* v. *Luck,* 201 Ark. 594, 146 S. W. 2d 696 (1941); and *Ptak* v. *Jameson,* 215 Ark. 292, 220 S. W. 2d 592 (1949).

Turning now to the facts incident to the challenged votes, we have examined the record and find substantial evidence to support the trial court. Certainly the evidence was not overwhelmingly in favor of the validity of the three questioned votes; however, the evidence we shall summarize which supports the trial court's findings was substantially sufficient.

The vote first challenged was that of Mrs. Doris Cathleen Schoeff. She finished the public schools at Lodi in Pike County (District 1) in 1963. Shortly after graduation she went to Huntington, Indiana, to live with her married sister. There she met and married Paul Schoeff. For a time the couple lived in Florida where Paul was stationed until he was shipped overseas in February 1967. After a brief stay with Paul's parents in Indiana, Doris decided it would be better to live with her parents at Lodi, Arkansas, until Paul could fulfill his overseas military obligation. She took up residency at Lodi in May 1967, helping to equip a room at her parents' home for herself, her son, and a child soon to be born. She opened a bank account at Glenwood, obtained an Arkansas driver's license, "and considered it my home," at least until her husband returned, and hopefully thereafter. In fact she testified that she and her husband corresponded about buying her father's farm and settling there; however, it was agreed that the decision to buy the farm would be postponed until Paul came home.

Doris duly registered as a voter prior to the school election of June 18, 1968. Her husband was discharged early in June and headed for Lodi and his family. She testified that he inquired about the prospects of employment in Pike County; that the outlook was not too good and they decided to look over the situation at Columbia City, Indiana. They left for Columbia City some four days after the election, where Paul obtained a good job and they have remained. There was some evidence to the effect that they intend to return to Lodi, possibly after two years.

It is not disputed that Doris Schoeff intended to make her home in Pike County, at least until her husband returned from overseas. She resided there continuously for some thirteen months prior to and including the date of the election at which she voted. Her conduct was consistent with her assertion of residency; at least the trial court so found and on substantial evidence.

The challenged votes of Mr. and Mrs. Bobby Jack Vaught may be considered together. As a young couple they lived in numerous places because he was generally following public and seasonal work. Here is a chronology of their significant moves and activities in the years just prior to the school election of 1968:

In 1964 they moved to Lodi where his father lived; Bobby registered with the Pike County draft board in 1965 and the registration was never transferred; work grew scarce and he went to Indiana in May 1966; most of the Vaughts' personal belongings were left in Lodi because, so they testified, their stay in Indiana was intended to be temporary; in November 1966 they voted absentee in Pike County; they started back to Arkansas in 1967 and Mrs. Vaught was seriously injured in a collision. That experience, said Vaught, delayed their departure for several months. They voted absentee in the school election. They were re-established in Pike County in time to vote in person in the August 1968 primary election. In the interim they had paid taxes on personalty in Pike County.

It was not unreasonable for the trial court to conclude, from the assertions and course of conduct, that the Vaughts established their residence in 1964 and maintained it throughout the period described.

Affirmed.