NOEL CHARISSE v. JULIA ELDRED

5-5820 477 S.W. 2d 480

Opinion delivered March 13, 1972

*Herbert L. Ray,* for appellant.

*Little & Lawrence,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Noel Charisse asserts that there was no substantial evidence to sustain the judgment of the circuit court ousting him from the office of alderman of Sulpher Springs upon the ground that he was ineligible because he was not qualified elector of the city. The usurpation suit was brought by appellee, who was the incumbent alderman defeated for reelection by appellant. We find substantial evidence to support the judgment.

It is conceded that Charisse must have been a qualified elector of Sulphur Springs by having been a resident of the state for one year immediately preceding his election in order to be qualified to serve. See Arkansas Constitution, Art. 3, § 1, Art. 19, § 3; Ark. Stat. Ann. § 19-902 (Repl. 1968). In determining quali-

fications of voters and public officials, the word "residence" has usually been treated as if it were synonymous with "domicile" and dependent to some extent upon the intention of the person involved. *Wheat* v. *Smith,* 50 Ark. 266, 7 S.W. 161; *Wilson* v. *Luck,* 201 Ark. 594, 146 S.W. 2d 696; *Ptak* v. *Jameson,* 215 Ark. 292, 220 S.W. 2d 592; *Phillips* v. *Melton,* 222 Ark. 162, 257 S.W. 2d 931.

The case was tried upon a stipulation of facts. Appellant purchased real property in Sulpher Springs on June 28, 1966, and took possession of it in November of the same year. He had received mail at his address in Sulphur Springs ever since. Charisse maintains a bank account opened in September 1967 at Gravette. His social security records were transferred from his former residence in Los Angeles to the Fayetteville office, from which his social security checks were mailed to his Sulphur Springs address. Appellant's church membership was transferred to the Christian Science Society of Sulphur Springs in October 1967 and remains there. He filed a federal income tax return in Arkansas in 1967, but did not have enough income to require either a state or federal return in 1966, 1968 and 1969.

It was stipulated he would testify that:

He temporarily left his residence in Sulphur Springs in June 1968 and remained until May 1970 at the request of his daughter in Los Angeles who was having personal problems with her stepfather there; when she graduated from high school, he returned to Sulphur Springs; he never intended to abandon his residence in Arkansas; he voted in the general election in California on November 5, 1968, at the precinct where he registered to vote on August 29, 1966, but was not aware of the procedure by which he might have cast an absentee ballot in Arkansas, or of any legal effect his voting might have upon his Arkansas residence, and did not intend to abandon his Arkansas residence by doing so; he executed a voter registration affidavit in Benton County in September 1970, stating that he had been a resident of Arkansas for four years; he did not

assess any real or personal property for taxation or pay any taxes in California between June 1968 and May 1970.

It was also stipulated that: appellant's daughter and Victor H. and Vinita Halperin would corroborate his testimony as to the reason for his presence in California; the Halperins would testify that when he left Arkansas appellant told them he would be gone only a few weeks, that he advised them through letters of his intention to return and that appellant had not assessed any personal taxes in Arkansas because the Benton County Tax Assessor had advised him that he did not have sufficient property to require assessment; others would testify that he did not intend to abondon his permanent residence in Arkansas when he went to California.

He indicated on the California roster of voters in the precinct where he voted that his residence was on the same street it was in his voter registration affidavit. Water service to appellant's dwelling house in Sulpher Springs was disconnected on October 31, 1968, gas on November 4, 1968, and electricity on October 29, 1968. Service on all utilities was returned in May 1970.

It is true that the question of intention is one fact. *Phillips* v. *Melton,* supra. Appellant places great reliance upon his own declarations of intention. The question of intention, however, is to be ascertained not only by statements of the person involved but by his conduct concerning his "voting" residence. *Phillips* v. *Melton,* supra. We have recognized that circumstances may belie protestations of purpose and that the fact finder is not bound to accept claims of intent when the circumstances point to a contrary conclusion, *Williams* v. *Dent,* 207 Ark. 440, 181 S.W. 2d 29. The declarations of the person whose domicile or residence is in dispute may be for a self-serving purpose and are sometimes called the lowest species or quality of evidence on the subject. *Burr's Admr.* v. *Hatter,* 240 Ky. 721, 43 S.W. 2d 26 (1931); *Youngblood* v. *Rector,* 126 Okla. 210, 259 P. 579 (1927); *Pickering* v. *Winch,* 48 Or. 500, 87 P. 763, 9 L.R.A. (n.s.) 1159 (1906); *Ashton* v. *Ashton,* 197 Okla. 241, 169 P. 2d 565 (1946); *In re Meyers' Est.,* 137 Neb. 60, 288 N.W.

35 (1939); *Elwert* v. *Elwert,* 196 Or. 256, 248 P. 2d 847, 36 A.L.R. 2d 741; *In re Beechwood,* 142 Misc. 400, 254 N.Y.S. 473 (1931). They cannot prevail unless borne out by acts. See *Hogan* v. *Davis,* 243 Ark. 763, 422 S.W. 2d 412; *Pike County School District* v. *Pike County Board of Education,* 247 Ark. 9, 444 S.W. 2d 72; 28 C.J.S. 45, Domicile § 18. When acts are inconsistent with a person's declarations, the acts will control, and declarations must yield to the conclusions to be drawn from the facts and circumstances proved. *Texas* v. *Florida,* 306 U.S. 398, 83 L. Ed. 817, 59 S. Ct. 563, 121 A.L.R. 1179 (1939); *Rosenberg* v. *Commissioner of Int. Rev.,* 59 App. D.C. 178, 37 F. 2d 808 (1930); *Successions of Rhea,* 227 La. 214, 78 So. 2d 838 (1955); *Barrow* v. *Barrow,* 160 La. 91, 106 So. 705 (1925); *In re Dorrance's Est.,* 309 Pa. 151, 163 A. 303 (1932), cert. denied, 288 U.S. 617, 53 S. Ct. 507, 77 L. Ed. 990 (1933); *Fox* v. *Commonwealth,* 207 Va. 701, 152 S.E. 2d 60 (1967); *Bowen* v. *Commonwealth,* 126 Va. 182, 101 S.E. 232 (1919); *Lee* v. *Moseley,* 101 N.C. 311, 7 S.E. 874 (1888); *New York Trust Co.* v. *Riley,* 24 Del. Chan. 354, 16 A. 2d 772 (1940); aff'd 315 U.S. 343, 62 S. Ct. 608, 86 L. Ed. 885 (1942); *In re Beechwood,* supra.

The place of exercise of one's elective franchise is not necessarily conclusive as to one's intent on the question of domicile or residence for voting purposes, but it is certainly important, and may be the most important evidence on the subject. *In re Meyers' Est.,* 137 Neb. 60, 288 N.W. 35 (1939); *In re Curtiss' Will,* 140 Misc. 185, 250 N.Y.S. 146 (1931); *Ex parte Wessinger,* 247 Ala. 113, 22 So. 2d 510 (1945). See also, *Mallard* v. *First Nat. Bank,* 40 Neb. 784, 59 N.W. 511 (1894). Cf. *Alburger* v. *Alburger,* 138 P. Super. 339, 10 A. 2d 888 (1940). In *Hogan* v. *Davis,*supra, we said that by executing a voter registration affidavit in another state the registrant had left the matter of his "residence" not seriously open to doubt.

Voting in an election certainly was substantial evidence of appellant's voting residence, especially when considered with the length of his continuous stay in California, his previous residence and domicile there, and the disconnection of utilities at his Arkansas dwelling place before the date he voted. The trial court's findings, then,

must be upheld even though there is evidence of actions of appellant consistent with his declared intention. The test, on appeal, is whether the evidence supporting the judgment is substantial and not whether it preponderates. *Pike County School Dist.* No. 1 v. *Pike County Board of Education*, 247 Ark. 9, 444 S.W. 2d 72; *Phillips* v. *Melton*, supra.

The judgment is affirmed.