The Honorable Mike Beebe State Senator 211 W. Arch Searcy, AR 72143
Dear Senator Beebe:
This is in response to your request for an opinion concerning the eligibility of an alderman to continue serving as such if he moves out of the city ward which he represents. Specifically, you have attached a letter which explains that a Dewitt city councilman has moved from DeWitt and physically resides outside the city in a rented house. The alderman has stated, however, that it is his intent to move back into the city and contends that he maintains his office, phone, mail and voting at the residence he moved from. Your specific question is whether, under A.C.A. § 14-43-310, he is disqualified to hold office and whether a vacancy should be declared under the statute. You also inquire as to whether action taken by the city council while this alderman continues to sit may be challenged.
It is my opinion that the issue is ultimately one of fact which this office cannot determine. In my opinion, however, the alderman is qualified to continue serving if his "domicile" remains in the ward from which he was elected. A person's domicile is dependent to some extent upon the intention of the person involved. The question of intent is determined not only by the statements of the person involved, but also by his or her conduct. It is my opinion, additionally, in response to your second question, that even if the alderman in question is not, as a factual matter, "domiciled" within the ward, and is thus disqualified to hold the office, the actions he takes while still sitting on the council will be valid because he will be deemed a "de facto" officer.
The relevant statute, A.C.A. § 14-42-310, provides as follows:
 If any duly elected alderman shall cease to reside in the ward from which he was elected, that person shall be disqualified to hold the office and a vacancy shall exist which shall be filled as prescribed by law.
The determinative issue is the construction of the word "reside." The question is whether the legislature intended this word to mean the actual physical presence of a person in a particular place (that is, a person ceases to "reside" in a particular locale when they remove their physical usual place of abode from it), or whether the legislature intended the word "reside" to mean "domicile" (that is, a person ceases to "reside" in a particular locale when they cease to consider it their fixed and permanent home, and their actions bear out this intent).
There are no helpful Arkansas cases construing this particular statute, and we can glean no satisfying evidence of legislative intent as to the construction of this word from either the statute or the original Act 444 of 1961 which gave rise to it. It has been held, however, that in determining the qualifications of voters and public officials, the word "residence" has usually been treated as if it were synonymous with "domicile" and is thus dependent to some extent upon the intention of the person involved. Charisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480
(1972), citing Phillips v. Melton, 222 Ark. 162,257 S.W.2d 931 (1953); Ptak v. Jameson, 215 Ark. 292, 220 S.W.2d 592
(1949); Wilson v. Luck, 201 Ark. 594, 146 S.W.2d 696 (1941); and Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887).
In the absence of any contrary legislative intent, we must give the word "reside" the construction which is most often placed on it by the Arkansas courts in this context, and thus will construe it synonymously with "domicile."
"Domicile" is defined as meaning "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere." Black's Law Dictionary (5th ed. 1979) at 435. The question of intent is one of fact to be ascertained not only by the statements of the person involved, but by his or her conduct as well. Shinn v. Heath, Director, 259 Ark. 577, 535 S.W.2d 57
(1976). Among the factors looked at to determine whether a person has the requisite intent to establish a domicile in a particular place are declarations of the parties, exercise of political rights, payment of personal taxes, a house of residence and a place of business. Gooch v. Gooch, 10 Ark. App. 432,664 S.W.2d 900 (1984). It has been held that the declarations of the person whose domicile or residence is in dispute may be for a self-serving purpose and that such declarations are sometimes called the lowest species or quality of evidence on the subject.Charisse, supra. It has also been held that although the place of exercise of one's elective franchise is not necessarily conclusive as to one's intent on the question of domicile, it is certainly important and may be the most important evidence on the subject. Id. at 105.
The recent case of Davis v. Holt, 304 Ark. 619, 804 S.W.2d 362
(1991), does not, in my opinion, require a different construction of the term "residence." The court there held that the definition of "residence" is not easy. It also held that in the context of a school board election, the term "residence" is used by the Constitution and statutes to mean the place where the candidate's house is physically located. The court also stated, however, that:
 Intent is relevant to the question of domicile when a party has more than one residence or has departed from a residence for a temporary stay elsewhere with the intent of returning, see Charisse v. Eldred, supra, but it has far less to do with the concept of residency. [Emphasis original.]
304 Ark. at 623.
The court in Davis v. Holt was faced with a fact situation where there was no dispute as to the intention of the candidate as to "domicile." The candidate claimed merely that because a portion of the land he resided upon was in the school district in question, even though his house was not located on it, he was a "qualified elector" and bona fide resident of the district. He also claimed that it had always been his intention to reside in the school district, based presumably upon representations of school officials who assured him that his property was located in the district. The court was not faced with a situation in which a party has departed from a residence for a temporary stay elsewhere with the intent of returning. The court thus held that intent is not a crucial factor in determining where a particular dwelling is located (that is, it does not matter if you intend and believe that your house and permanent home is located in a particular political subdivision, as the candidate in Davis was contending, because this is a question which is concretely verifiable by resort to official documents). Intent is relevant, according to the court, if there are two potential places where a person's residence may be, or if a person leaves one residence temporarily with the intent to return. It appears that theDavis court cited Charisse v. Eldred as continuing to be the controlling precedent in such cases. Davis is thus factually dissimilar to the question you have posed and, in my opinion,Charisse is the controlling law.
Charisse was cited twice by the Davis court as authority in instances such as the one at hand (304 Ark. at 622 and 623), and the court in Charisse construed the term "residence" as synonymous with "domicile." In Charisse, a candidate for alderman had lived outside the state so as to preclude his meeting the former durational residency requirement to be a qualified elector, and thus a candidate for alderman. He claimed, however, that he was only absent from the state temporarily, and always intended to return. The court held the term residence in that case as being synonymous with domicile, and that his intent coupled with his actions was the crucial test. The court determined in Charisse, however, as a factual matter, that the candidate in that case was not "domiciled" in Arkansas for the requisite period, primarily because he registered to vote and voted during the relevant period in the State of California.
It is thus my opinion that if the alderman in question is "domiciled" in the ward which he represents, he continues to be qualified to serve under the statute. This is a factual question which must be determined in light of the factors set out above.
Your second question inquires as to the validity of actions taken by the city council while the alderman in question continues to sit and cast a vote on matters before the council. This question is only relevant if in fact the alderman in question is not still "domiciled" in the ward. Even if he is not, it is my opinion that the actions taken by him in conjunction with the council will be valid. The alderman in such a case, in my opinion, would be a "de facto" official. A "de facto" official is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though he has no right to the office in fact. Appleby v. Belden Corp.,22 Ark. App. 243, 738 S.W.2d 807 (1987). While he is permitted to retain his office, acts of a de facto official are as valid and effectual as though he were an officer by right. Id.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh